RAYMOND MURTEZA *v.* STATE OF CONNECTICUT (3887)

DUPONT, C. J., HULL and DALY, Js.

Argued February 6—decision released April 29, 1986

*Wesley W. Horton,* with whom were *Arnold Rutkin, Kathleen A. Hogan* and, on the brief, *Kimberly A. Knox* and *David Bloomberg,* law student interns, for the appellant (plaintiff).

*Jeremiah M. Keefe,* with whom was *James E. Kernan,* for the appellee (defendant).

HULL, J. This case raises the question of whether the trial court erred in refusing to set aside a general verdict for the defendant and to render judgment for the plaintiff in a statutory negligence action he brought against the state pursuant to General Statutes § 52-556.[1] The plaintiff claims that because the jury answered two interrogatories in a manner that conclusively established that the defendant was at fault, the trial court could only render judgment for him. We disagree. The jury, as the ultimate judge of the credibility of witnesses and the weight to be accorded their testimony, was entitled to disbelieve the plaintiff's damage claims entirely. Thus, despite the plaintiff's assertion that he suffered tremendous injuries and damages, we find no error.

The case was brought to recover damages the plaintiff claimed to have sustained as a result of an automobile accident which occurred in Waterbury on February 7, 1978. The plaintiff's amended complaint alleged that Michael Sloan, an employee of the defendant, the state of Connecticut, drove a Connecticut National Guard truck through a red light at an intersection and struck a Waterbury police car in which the plaintiff, a Waterbury police officer, was a passenger.

After a nine week trial, the jury was asked, in addition to returning a general verdict, to answer five special interrogatories, only two of which are pertinent to our inquiry. Those two interrogatories are as follows: (1) "Do you find, based on the evidence presented to you that it is more probable than not that Michael Sloan ran a red light when he drove his vehicle into the intersection of West Main Street and southbound

---

[1] General Statutes § 52-556 provides: "Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury."

Watertown Avenue, where [the] incident in question occurred?"; and (2) "Do you find, based on the evidence presented to you that Michael Sloan was negligent in one or more respects as set forth in the Plaintiff's complaint?" The jury answered both questions affirmatively, but nevertheless rendered a general verdict in favor of the defendant.

Counsel for the plaintiff immediately asked the court to instruct the jury to render a verdict for the plaintiff in accordance with their findings regarding fault. The court refused to do so on the ground that the jury might not have found that the plaintiff had sustained his proof as to damages. The plaintiff then filed a motion to set aside the general verdict and judgment, and for judgment on the responses to the interrogatories and for a new trial as to damages. The trial court denied these motions stating that "[t]he Court is of the opinion that the jury could have discredited testimony as to damages and that they could have found that the damages, perhaps, were not proven by a fair preponderance of the evidence as is necessary." The plaintiff now appeals claiming as his sole issue that, notwithstanding the general verdict for the defendant, he was entitled to judgment as a matter of law because of the jury's answer to the two interrogatories and, therefore, the trial court erred in refusing to set aside the verdict.

Relevant testimony before the jury follows. On February 7, 1978, there was a snow storm in Connecticut so severe that the governor called out the National Guard. Only emergency vehicles were allowed on the roads of the state. At approximately 11:30 p.m., on that evening, the plaintiff was a passenger in the back seat of a police cruiser being driven by Officer Anthony Palladino. The cruiser was driving in a southerly direction on Watertown Avenue. At the same time, Michael Sloan was driving a National Guard truck westerly on West Main Street. His mission was to deliver some

police officers to their homes. Sloan failed to stop at the red light at the intersection of West Main Street and Watertown Avenue. The cruiser driven by Palladino struck the truck at a point in the middle of the southbound Watertown Avenue lanes of travel, badly damaging the front of the cruiser and smashing its door in. Palladino's speed was between fifteen and twenty miles an hour, while Sloan was travelling at about twenty-five to thirty-five miles per hour. Palladino never saw the truck before the collision. The roads in the area were icy and only partly plowed. They were lined with high snow banks.

The plaintiff was taken to Waterbury hospital where he remained for fifteen days. He was treated for a complaint concerning his left eye which was described in the hospital records as "some tearing of the eyes" and "some white mucus from the left eye." The plaintiff was also treated for acute back and neck pain, by Dr. J. Michael Hogan, an orthopedic surgeon, who had treated the plaintiff for back problems since 1972.

The plaintiff claimed the following principal consequences of the accident: (1) sexual impotency; (2) lost wages; (3) permanent disability from work; (4) general limitation of social, recreational and normal life activities; (5) drug addiction; and (6) termination of his marriage. The plaintiff also claimed $84,996.55 of medical special damages. At trial, the plaintiff introduced extensive medical testimony in an attempt to substantiate these claims. Hogan testified that a diagnostic test known as a myelogram, taken right after the accident, showed significant signs of abnormality of the spine, while an identical test performed six months before the accident showed none. His discharge diagnosis was acute cervical strain and abrasion of the eye. While Hogan performed four surgical operations on the plaintiff's cervical spine after the accident, he stated that the accident was not the only cause of the treatment

rendered after the accident. Dr. Richard Matza, an orthopedic surgeon who treated the plaintiff after Hogan moved to Maine, testified that all of the six operations the plaintiff had on his cervical and lumbro-sacral spine resulted from injuries incurred in the accident and that the plaintiff was permanently disabled therefrom.

Several other doctors testified that the plaintiff was able to work and that his injuries were not caused by the accident. Dr. James Finn, a neurosurgeon, testified that, in September 1978, the plaintiff was disabled from all employment and would probably continue to be for another three to six months. He stated, however, that the plaintiff's back problem was primarily a result of injuries which occurred prior to 1978. Dr. Macellis Glass, an orthopedic surgeon, testified that X-rays taken after the accident showed no evidence of a herniated disc in the cervical area. He further testified that a myelogram was performed on June 7, 1977, which identified cervical scar tissue which had formed from a previous operation. A myelogram performed in March 1978, after the accident, showed no change from the earlier myelogram, and no cervical injury was sustained in the accident.

I

DID THE TRIAL COURT ERR IN REFUSING TO SET ASIDE THE VERDICT AND IN REFUSING TO RENDER JUDGMENT FOR THE PLAINTIFF

The role of an appellate court where an appellant seeks judgment contrary to a general verdict, because of the jury's allegedly inconsistent answers to interrogatories, was first analyzed in *Belchak* v. *New York, N. H. & H. R. Co.,* 119 Conn. 630, 179 A. 95 (1935). In *Belchak,* the plaintiff recovered damages for injuries suffered when an automobile which his intestate was driving was struck by a freight car as the automo-

bile crossed the defendant's tracks. The jury rendered a general verdict for the plaintiff but answered in the affirmative the question whether, at the time of the accident, an employee of the defendant had been on the crossing swinging a white lantern. The defendant moved to have the general verdict set aside and to have judgment rendered in its favor, claiming that the answer to the interrogatory showed indisputably that the driver had been contributorily negligent so as to bar the plaintiff's recovery. The trial court rendered judgment in the defendant's favor, and on appeal the Supreme Court found error.

In finding error in *Belchak,* the Supreme Court clarified the appropriate standard to use when answers to interrogatories allegedly conflict with a general verdict: "To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively *to show that as a matter of law judgment could only be rendered for the party against whom the general verdict was found;* they must negative every reasonable hypothesis as to the situation provable under the issues made by the pleadings; and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered at the trial." (Emphasis added.) Id., 634. The court determined that that standard had not been satisfied because "an entirely reasonable hypothesis might be formulated within the scope of the pleadings and not inconsistent with the answer to the interrogatory, which would remove the question of negligent conduct on the part of the operator of the car from the field of law to that of fact and, despite that answer, justify the general verdict for the plaintiff." Id., 635. This was so because the interrogatories had not addressed several issues: "How wide was the

street, how many tracks ran across it and how far was the distance over them? Where did the employee stand, in the center of the road or at one side, between the automobile and the tracks or beyond them? Did he swing the lantern across the road or parallel with its direction? Were there obstructions to the view of the approaching driver? . . . [W]as the lantern lighted?'' Id., 634–35.

It is well established that a general verdict must stand if the jury could have found for the defendant on any one of the material issues it had to decide. *Kalleher* v. *Orr,* 183 Conn. 125, 127, 438 A.2d 843 (1981). *Goodman* v. *Metallic Ladder Mfg. Corporation,* 181 Conn. 62, 65, 434 A.2d 324 (1980). Where there is a general verdict for the defendant, without interrogatories, it is presumed that the jury found every issue in favor of the defendant. *Stone* v. *Bastarache,* 188 Conn. 201, 204, 449 A.2d 142 (1982). The *Belchak* court's conclusion follows logically from this: if the interrogatories did not address certain issues, they are deemed to be found for the defendant and, therefore, judgment may not be rendered contrary to the general verdict. *Belchak* v. *New York, N. H. & H. R. Co.,* supra, 634–36. Here, the defendant claims that the answers to the interrogatories did not address the issues of proximate cause of the accident or damages and accordingly, those issues must be deemed to have been found in its favor. We will consider the defendant's two *Belchak* claims: that the interrogatories did not address the issues of proximate cause or damages, in order.

In resolving these issues, we consider the pleadings and the record as to the claim for entry of judgment, and the evidence as to the question of granting a new trial on liability.[2] We do so with our general standard

---

[2] In *Gesualdi* v. *Connecticut Co.,* 131 Conn. 622, 41 A.2d 771 (1945), the court considered the two pronged relief of entering judgment or granting

for reviewing a trial court's refusal to set aside the verdict in mind. "Our review of a trial court's refusal to set aside a jury verdict is limited. If, on the evidence, the jury could reasonably have decided as they did, we will not find error in the trial court's acceptance of the verdict. *Rood* v. *Russo,* 161 Conn. 1, 3, 283 A.2d 220 (1971); *Giambartolomei* v. *Rocky DeCarlo & Sons,* 143 Conn. 468, 474, 123 A.2d 760 (1956). A jury verdict should not be disturbed 'unless it is against the evidence or its manifest injustice is so plain as to justify the belief that the jury or some of its members were influenced by ignorance, prejudice, corruption or partiality.' *Martino* v. *Palladino,* 143 Conn. 547, 548, 123 A.2d 872 (1956). Upon review by the trial court on a motion to upset the jury's verdict and in this court, 'the evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable.' *Horvath* v. *Tontini,* 126 Conn. 462, 464, 11 A.2d 846 (1940). . . . 'The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness. *Waldron* v. *Raccio,* 166 Conn. 608, 618, 353 A.2d 770 [1974]; *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 19, 347 A.2d 102 [1974].' *Katsetos* v. *Nolan,* 170 Conn. 637, 656, 368 A.2d 172 (1976)." *Kalleher* v. *Orr,* supra, 126–27. The court was not in error in refusing to set aside the verdict.

---

a new trial. There is language in that case; id., 631–32; that may be held to require that for either form of relief, only the pleadings and not the evidence may be considered. The Supreme Court's reference to the source of this rule in *Belchak* v. *New York, N. H. & H. R. Co.,* 119 Conn. 630, 179 A.2d 95 (1935), however, makes it clear that the rule applies only to the entry of judgment. The issue of setting aside the verdict and ordering a new trial is tested by the evidence before the trier. See, e.g., *Pappaceno* v. *Picknelly,* 135 Conn. 660, 661, 68 A.2d 117 (1949).

## A

### LACK OF FINDINGS IN THE ANSWERS TO THE INTER-ROGATORIES THAT THE DEFENDANT'S EMPLOYEE'S NEGLIGENCE WAS THE PROXIMATE CAUSE OF THE PLAINTIFF'S INJURIES

The plaintiff's amended complaint describes the movement of the police car and the National Guard truck leading up to the accident at the intersection. It then claims in essence that the collision was due to the negligence of the defendant acting through Michael Sloan in one or more of the following ways: (1) he failed to grant the right of way at the stop light; (2) he operated the truck at a rate of speed that was unreasonable with regard to the prevailing conditions; (3) he failed to keep his vehicle under control; (4) he should have, but failed to see the police car in which the plaintiff was a passenger in time to avoid the collision; and (5) he drove his vehicle with defective or inadequate brakes or failed to apply his brakes to avoid colliding with the patrol car.

Based on this complaint, the record, and the jury's response to the second interrogatory finding Sloan negligent in one or more of the respects set forth in the complaint, we could not say as a matter of law that a verdict was rendered for the plaintiff. The mere finding of the jury that Sloan was negligent in one or more of the respects alleged in the complaint does not, in and of itself, mandate the conclusion that this negligence was the proximate cause of the accident. We could formulate too many *Belchak*-type hypotheses to justify our invading the province of the jury on that basis. The jury's response that Sloan "ran a red light," however, establishes that there was negligence per se on Sloan's part. As a matter of law, the jury could not reasonably

have found that Sloan's negligence was not a proximate cause of any injuries the plaintiff may have suffered.

When we also consider the evidence, as we must when reviewing the trial court's decision on the plaintiff's motion to set aside the verdict, the case is even stronger. An examination of the photographs in evidence shows substantial damage to the truck and the automobile. They also show the snowy conditions of the roads leading up to the intersection and illustrate that because of those conditions, each approach to the intersection was hemmed in on the sides by high sight-blocking piles of snow, giving the effect of two tunnels approaching each other. There is no doubt that under the snow emergency conditions shown by the evidence, Sloan's negligence in running the red light must reasonably be found to have been a proximate cause of the accident. This ground does not, as the defendant claims, justify the upholding of the verdict.

## B

### WHETHER THE JURY COULD REASONABLY HAVE FOUND THAT THE PLAINTIFF HAD FAILED TO PROVE HIS DAMAGES

Because the jury did find negligence and had to, as a matter of law, find that the defendant's negligence was the proximate cause of the accident, the decisive issue is whether the jury reasonably could have found that the plaintiff suffered no substantial injury or consequences from the accident. The plaintiff vigorously asserts that the jury had to find damages because he introduced evidence by experts as to certain injuries he received. He particularly refers to testimony of glass in his left eye and to testimony of two of his physicians attributing a certain amount of his back complaints to the accident. Because of the magnitude of the damages claimed by the plaintiff, and in order to afford a full measure of justice in the unusual circumstances of this

case, we have meticulously examined the voluminous medical records and transcripts.[3]

The face sheet of the plaintiff's admission record at Waterbury Hospital Health Center is signed by Dr. J. Michael Hogan, the plaintiff's attending physician. It describes the final diagnosis as acute cervical strain and abrasion of the eye. It describes the plaintiff's complaint that his head hit the window during the accident with resulting pain in the neck and low back. It relates that "he was seen in consultation by Dr. Jenusaitis, and also by Dr. Good, for complaints of irritation of the left eye. For this he was treated with ointment three times a day to the eye." Hogan did not report any glass observed in the plaintiff's eye. He found nothing objective in the lumbro-sacral region. He noted a previous history of a herniated disc and resection at the level of the sixth and seventh cervical vertebrae, and previous lower back discomfort satisfactorily controlled by exercises. The emergency room record from 11:55 p.m. on February 7, 1978, indicates: "[s]mall pieces of glass around . . . lashes." No other injuries were noted.

In Jenusaitis' consultation report, dated February 13, 1978, he stated that the plaintiff was "still in pain . . . in his left eye. He apparently had some glass which was in the eye which he stated on pulling the lid, a piece of glass fell out. He also apparently had some glass embedded in the left arm." Jenusaitis then described minor eye complaints made by the plaintiff and stated that there was a slight amount of conjunctivitis of the left eye. Good's consultation report, dated February 14, 1978, reported traumatic conjunctivitis and corneal abrasion, healed. The nursing note dated February 8, 1978, notes "has some glass in hair."

---

[3] Concerning the medical records, we have made allowances for the traditional difficulty of deciphering medical handwriting. Presumably, the jury labored under the same handicap.

There is no doubt from consideration of the testimony of the various physicians and other medical evidence that, as reported by the plaintiff, he was treated for an acute cervical strain. He continued to be treated extensively by many physicians. His treatment included repeated hospitalization and surgical procedures, involving at different times both the cervical and lumbar areas. It is likewise clear that *based on the plaintiff's complaints,* he was treated briefly with medication for a slight amount of conjunctivitis in the left eye. We can find in the record no testimony, however, other than that based on the plaintiff's complaints, that there was a piece of glass in his left eye.[4]

The plaintiff claims that the jury could not reasonably have disbelieved the evidence concerning his injuries. The answer to this argument lies in a massive and devastating attack on the plaintiff's credibility. A few major examples, among many others, follow: (1) The plaintiff claimed that his back was perfect as of the date of the accident, but the evidence showed that he had filed twenty-three workers' compensation claims prior to the accident and that he had obtained permanent disability ratings for both the neck and back prior to the accident; (2) he had made claims in other litigation prior to the accident that he sustained permanent injuries to the neck and back; (3) he claimed he was impotent, but his girlfriend of three years indicated that he was not; (4) he claimed that he was totally disabled from employment, but told one of his physicians that he had three part-time jobs; (5) he claimed that he was totally disabled from performing basic movements such as walking, but there was testimony that he had engaged in snow shoveling, riding horses, yard work, dancing, and long automobile trips; (6) he claimed loss of life's

---

[4] It should also be pointed out that the plaintiff's complaint did not allege aggravation of a pre-existing condition of the cervical spine. He claimed that *all* of his back problems after the accident were caused by it.

enjoyment, but admitted to owning and driving a limousine and owning horses; (7) he claimed his marriage was destroyed due to the accident, but his wife indicated that he was a gambler and a drug abuser before the accident; and (8) he claimed his drug dependency was a result of the accident, although his drug abuse apparently preceded the accident by some six years.

This court faced a claim similar to that raised here, in *Preisner* v. *Illman,* 1 Conn. App. 264, 470 A.2d 1237 (1984), on which both the plaintiff and the defendant rely. In *Preisner,* the plaintiff sought damages from the owner and operator of an automobile which rear-ended the plaintiff's automobile when she was stopped at a stop sign. The jury returned a general verdict for the defendants, and the plaintiff appealed from the trial court's denial of her motion to set aside the verdict. She claimed that the trial court erred because the operator of the other vehicle had acknowledged, on cross-examination, that at the scene of the accident he had admitted responsibility. The defendants' medical expert testified, however, that in his opinion, the plaintiff's chronic back pain and eventual surgery were not caused by the accident but were more likely brought about by some sort of degenerative process. The defendants argued that the plaintiff's activities and her medical history raised serious questions as to the credibility of the claims that her injuries were caused by the accident.

In finding no error, the *Preisner* court summed up the law in this area as follows: " 'The trial judge can sense the atmosphere of a trial and has an excellent vantage point for evaluating the factors that may have brought the jury to its verdict.' *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 3, 444 A.2d 211 (1982); *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 200, 292 A.2d 912 (1972); see also *Kukanskis* v. *Jasut,* 169 Conn. 29, 32–33, 362 A.2d 898 (1975). The credibility and weight to be attributed to any evidence offered is solely within

the province of the jury. *Riccio* v. *Abate,* 176 Conn. 415, 418, 407 A.2d 1005 (1979); *State* v. *Penland,* 174 Conn. 153, 157–58, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978); see *Gallo* v. *Gallo,* 184 Conn. 36, 38, 440 A.2d 782 (1981). The plaintiff had the burden of proving her claims by a fair preponderance of the evidence. It is the privilege of the jury to believe or disbelieve any evidence and to attribute to any evidence whatever weight it feels is merited. *Hyde* v. *Pizzuto,* 151 Conn. 701, 195 A.2d 53 (1963); *Prizio* v. *Penachio,* 146 Conn. 452, 152 A.2d 507 (1959).

" 'If the jury could reasonably have reached their conclusion the verdict must stand.' *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 555, 316 A.2d 394 (1972). 'The concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony, is a powerful argument for sustaining the action of the trial court. *Giambartolomei* v. *Rocky DeCarlo & Sons, Inc.,* 143 Conn. 468, 474, 123 A.2d 760 [1956].' *Novella* v. *Hartford Accident & Indemnity Co.,* supra, quoting *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141 (1965). . . .

"The plaintiff relies principally on *Pappaceno* v. *Picknelly,* 135 Conn. 660, 663, 68 A.2d 117 (1949), wherein the Supreme Court, in a 3-2 decision finding error in the trial court's denial of a motion to set aside a verdict for the defendants, concluded that the jury could not reasonably have found that the defendant bus driver was not guilty of negligence which was the proximate cause of the plaintiff's injuries. There was no claim made in that case, however, concerning the plaintiff's credibility.

"We conclude that the *Pappaceno* case rests on its own facts and is not controlling here where the slight or negligible impact at the scene and the plaintiff's med-

ical history over many years raised very substantial questions of her credibility. This case is more properly controlled by the dissenting opinion in that case which states that 'the jury may disbelieve any witness, leaving the plaintiff without the necessary preponderance of the evidence.' Id., 666 (*Jennings, J.*, dissenting)." *Preisner* v. *Illman*, supra, 266–67.

This case is obviously a much more difficult one than *Preisner*. In *Preisner*, there was no evidence of automobile damage and the credibility question was a relatively modest one. In this case, there was substantial damage to the vehicles. The plaintiff's credibility, however, was substantially and drastically impeached and there was nothing in the evidence that required the jury to believe any one of the plaintiff's complaints wholly or in part. Most significantly, there was nothing in the evidence that, either in law or common sense, required the jury to believe that the plaintiff's complaints, to the extent the jury found them to be valid, were caused by the accident in question. To put it colloquially, it may well be that the jury just did not "buy" the plaintiff's testimony, and his supporting medical evidence, that he was injured at all in the accident. This was its prerogative.

It is only in a rare case that it can be said, as a matter of law, that the jury must accept as true evidence offered before it. *Fox* v. *Mason*, 189 Conn. 484, 489, 456 A.2d 1196 (1983). This is not such a case as concerned damages. Under the general verdict rule, the verdict must be sustained on this ground.[5]

There is no error.

In this opinion the other judges concurred.

---

[5] The defendant purported to cross appeal claiming six "errors." Its "claims" however, are merely alternate grounds for upholding the verdict which should have been raised in accordance with Practice Book § 3012 (a). In view of our disposition of the case, we do not consider the defendant's claims.