EDWARD J. O'LEARY ET AL. *v.* INDUSTRIAL PARK CORPORATION
(5407)

SPALLONE, O'CONNELL and NORCOTT, Js.

Argued February 3—decision released May 17, 1988

*Elliot G. Macht,* with whom, on the brief, was *Laurence P. Rubinow,* for the appellant-appellee (defendant).

*Philip L. Steele,* for the appellees-appellants (plaintiffs).

NORCOTT, J. This appeal stems from a judgment for the plaintiffs, Edward J. O'Leary and Raymond M. Vincunas, who were general contractors doing business as Manchem, a limited partnership with which the defendant signed a bond for deed in connection with the construction of a facility for the storage and distribution of herbicides, pesticides and fertilizers in Man-

chester. The defendant appeals to this court after its motions to set aside the plaintiffs' verdict and for judgment notwithstanding the verdict were denied. The defendant claims error in five of the trial court's rulings. The plaintiffs cross appeal with respect to the trial court's granting of a directed verdict in favor of the defendant on an unfair trade practices claim set forth as the fourth count in the complaint. We find no error.

The jury could reasonably have found the following facts. In July of 1982, the plaintiffs were general contractors specializing in the construction of warehousing and manufacturing facilities. On five different occasions prior to 1982, the plaintiffs had purchased land, constructed and leased buildings specifically for the storage of herbicides, pesticides and fertilizers for distribution to Chemlawn Corporation (Chemlawn). The defendant was the owner of an industrially-zoned lot in the Manchester Industrial Park (MIP) located in Manchester.

During August and September of 1982, representatives of the plaintiffs and the defendant began negotiations for the purchase of the defendant's lot which Chemlawn had identified as a possible site for one of its facilities. Chemlawn required a site for a facility the principal purpose of which was to be the storage, mixture and loading of chemicals onto trucks which were to be washed and cleaned at the site.

A town well was located in the MIP some 1700 feet from the proposed site. This well appeared on a municipal map which was recorded in the Manchester town hall. In addition, a large number of tree stumps and other debris had been dumped on the defendant's lot, and the rear slope of the lot required grading.

Pursuant to their agreements with Chemlawn, the plaintiffs intended to purchase the defendant's lot, build a storage, distribution and office facility and lease the furnished premises to Chemlawn. As a part of the pre-

liminary negotiations, a representative of the defendant, William Bellock, represented to the plaintiffs that the lot was suitable for the construction of an industrial building. Bellock was aware of the purpose for which Chemlawn intended to use the buildings.

On October 26, 1982, the plaintiffs and the defendant executed a bond for deed for the purchase of the lot. The purchase price was $90,000, payable by a $5000 deposit with the balance due upon the sale and transfer of title to occur on or before November 10, 1982. The agreement also required that the tree stumps be removed and the slope graded within thirty days of the closing. The agreement finally provided that if the buyers [the plaintiffs] were denied a building permit, the defendant was to return the deposit.

The plaintiffs submitted their construction plans to the town, and on November 10, 1982, they, together with Chemlawn officials, met with officials from the state departments of health and environmental protection and the town water and sewer department. As of November 10, 1982, the plaintiffs had not paid any additional monies to the defendant pursuant to the agreement, and the defendant had neither removed the tree stumps nor graded the slope on the subject lot. Prior to this meeting, the town water and sewer department had recommended denial of the planned construction because, on the basis of prior experience, it was concerned about the possibility of the pollution of the town well.

At the November 10 meeting, many concerns were expressed regarding the proposed Chemlawn facility. After that meeting, the town's zoning enforcement officer wrote the plaintiffs to inform them that, pursuant to his review of the plans and of the data produced at the November 10 meeting, no zoning permit or building permit would be issued because the proposed use

posed a "significant hazard to the public water supply." Faced with this situation, the plaintiffs requested the return of the $5000 deposit from the defendant which refused to abide by the request. Despite their continued efforts to influence the town officials, the plaintiffs were unsuccessful in reversing the opposition. On December 2, 1982, Chemlawn ultimately advised the plaintiffs that it would look elsewhere for a site.

On March 29, 1983, the plaintiffs commenced an action against the defendant for breach of contract, misrepresentation and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b, to which the defendant filed a counterclaim in two counts alleging breach of contract.[1] Following a trial, judgment was rendered in accordance with the jury verdict in favor of the plaintiffs. The trial court denied the defendant's motions to set aside the verdict and for judgment notwithstanding the verdict and the court also denied the plaintiffs' motion to set aside the verdict with respect to the fourth count of the complaint.

I

The defendant claims that the trial court erred (1) in denying its posttrial motions inasmuch as the jury's verdict on the third count was inconsistent with the jury's response to an interrogatory question and was contrary to the evidence and to the law, (2) in refusing to submit to the jury interrogatories requested by the defendant, (3) in denying the defendant the right to state the grounds of its objection to an evidentiary offer and to make an offer of proof, (4) in admitting into evidence orders of the department of environmental protection (DEP), and (5) in permitting the plaintiffs' counsel to

---

[1] The first count of the plaintiffs' counterclaim was withdrawn shortly before the commencement of trial.

make *improper* statements to the jury during final argument. We disagree.

## A

The essence of the defendant's first claim of error is that the jury's verdict as to the third count should be set aside because of its allegedly inconsistent answer to a certain interrogatory.

In reviewing a trial court's refusal to set aside a verdict, " '[w]e must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial; *Bleich* v. *Ortiz,* 196 Conn. 498, 501, 493 A.2d 236 (1985); giving particular weight to the "concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . ." ' *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 667, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986), quoting *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141 (1965). The defendant can prevail on this claim only if we find that the jury could not reasonably and legally have reached its conclusion. *Bound Brook Assn.* v. *Norwalk,* supra." *Aksomitas* v. *Aksomitas,* 205 Conn. 93, 100, 529 A.2d 1314 (1987). Generally, great weight is given to a trial court's refusal to set aside the verdict and every reasonable presumption should be given in favor of its correctness. *Waldron* v. *Raccio,* 166 Conn. 608, 618, 353 A.2d 770 (1974). "The role of an appellate court where an appellant seeks a judgment contrary to a general verdict on the basis of the jury's allegedly inconsistent answers to such interrogatories is extremely limited. See *Belchak* v. *New York, N.H. & H.R. Co.,* 119 Conn. 630, 179 A. 95 (1935); *Murteza* v. *State,* 7 Conn. App. 196, 202–203, 508 A.2d 449, cert. denied, 200 Conn. 803, 510 A.2d 191 (1986). 'To justify the entry of a judgment contrary to a general ver-

dict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as a matter of law judgment could only be rendered for the party against whom the general verdict was found; *they must negative every reasonable hypothesis as to the situation provable under the issues made by the pleadings;* and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered at the trial.' (Emphasis added.) *Belchak* v. *New York, N.H. & H. R. Co.,* supra, 634." *Schenefield* v. *Greenwich Hospital Assn.,* 10 Conn. App. 239, 246–47, 522 A.2d 829 (1987).

The third count of the plaintiffs' amended complaint alleged that the defendant had both fraudulently misrepresented and failed to disclose the situation concerning the presence of the town well in the MIP. The failure to disclose the existence of the town well 1700 feet from the subject site was but one claim alleged in the third count. Another claim alleged was the defendant's fraudulent misrepresentation that the site was suitable for the intended use. With respect to the third count, the trial court submitted the following interrogatories, among others, to the jury. (1) "Do you find that any agent or employee of Industrial Park Corporation represented to the plaintiffs that the subject property was suitable for the construction of a facility that would involve the storage and distribution of chemical herbicides, pesticides and fertilizers?" (2) "If so, do you find also that the representation made by the defendant's agent that the property was suitable for the construction of a facility that would involve the storage and distribution of chemical herbicides, pesticides and fertilizers was untrue and known to be untrue by the party making it?"

The negative response to the second interrogatory suggests that the jury was not convinced that the defendant knew that the site was unsuitable for Chemlawn's intended use. The defendant contends that because the defendant did not know that the representation of suitability was untrue, the jury must also have concluded that the defendant never *intended* to mislead the plaintiffs and thereby induce them into the agreement. The defendant further contends that since the court instructed the jury that the plaintiffs had to prove that the defendant acted with intent to mislead, the jury verdict is contrary to the law and against the evidence in the case.

The defendant's focus on this one interrogatory is misplaced. The plaintiffs, in alleging fraudulent misrepresentation, did not have to prove that the defendant knew that the site was unsuitable, only that the defendants representation was made *recklessly, without belief in its truth.* See *J. Frederick Scholes Agency* v. *Mitchell,* 191 Conn. 353, 464 A.2d 795 (1983); see also *Miller* v. *Appleby,* 183 Conn. 51, 56, 438 A.2d 811 (1981). No interrogatory was submitted to the jury which would have required them to determine whether they found that the representation was made recklessly *or without belief in the truth,* and the defendant took no exception to the trial court's instruction to the jury on this issue.[2] It is the appellant's duty to prepare an

[2] The trial court instructed the jury on this issue in pertinent part as follows: "As I have said, this is an action in fraud. It becomes my duty to explain to you what the plaintiffs must prove in order to be entitled to recover damages for fraudulent representations. The essential elements are as follows: First, there must have been a representation of an existing fact. Second, the representation must have been untrue and either known by the defendant to be untrue or made without belief in its truth or in careless disregard as to whether it was true or false. . . .

"Now, fraud involves an element of wrongdoing. If a man makes a statement of fact in the honest belief that it is so, he may be mistaken but he is obviously not guilty of any moral wrong or of a fraud. However, if he makes it when he knows it is false or if he makes it without any belief that

adequate record for appellate review. Practice Book § 4061; *Carpenter* v. *Carpenter,* 188 Conn. 736, 739 n.2, 453 A.2d 1151 (1982). The jury could have found that, without knowing definitively that the site was suitable, the defendant intended to induce the plaintiffs to enter the agreement by means of the recklessness of its representation; in this respect, the jury's answer to the second interrogatory is not at all inconsistent with its verdict.

Furthermore, with respect to the plaintiff's claim of fraudulent nondisclosure, we note that the jury's responses to the fifth, sixth and seventh interrogatories regarding the third count indicate that the jury did, in fact, conclude that the defendant knew of the existence of the well, had a duty to disclose that fact to the plaintiffs, and failed to do so.[3] The failure to disclose known facts and a request or a circumstance which imposes a duty to speak, forms the essence of fraudulent misrepresentation. *Marchand* v. *Presutti,* 7 Conn. App. 643, 645, 509 A.2d 1092 (1986). We find the defendant's contention that the map recorded in the town hall gave the plaintiffs constructive knowl-

---

it is true or if he makes it in disregard of its truth or falsity, he is not acting fairly and honestly toward the party with whom he is dealing and such a representation may be a basis for a recovery in fraud. I say may because the plaintiff must also prove that representation must have been made with an intent to induce the plaintiff to act upon it and did, in fact, induce the plaintiff to enter into the transaction . . . .

"As regards the plaintiffs, you must find that the failure of the defendant to disclose the fact or facts actually was a substantial factor in inducing the plaintiff to enter into the transaction. . . ."

[3] The fifth, sixth and seventh interrogatories as to the third count of the complaint were as follows:

"5. If so, do you also find that the plaintiffs did so act on the defendant's representation to their injury?

"6. Did you find the defendant's agents or employees knew of the existence of a town well approximately 1700 feet from the subject property?

"7. If so, do you find that the defendant's agents or employees did not disclose to the plaintiffs the existence of the town well located approximately 1700 feet from the subject property?"

edge of the town well to be without merit. The doctrine of constructive knowledge does not apply to serve as a shield of protection from accountability for one who makes false representations to another's damage. *Aksomitas* v. *Aksomitas,* supra, 99. From the evidence produced at trial, the jury could have reasonably found that the defendant's failure to disclose this information induced the plaintiffs to enter into the agreement. The jury's response to the second interrogatory can reasonably be construed as consistent with its verdict. The defendant has failed to meet its burden of proving that, as a matter of law, judgment could have been rendered only for the defendant with respect to the third count. As such, the trial court did not err in denying the defendant's motion to set aside the verdict as to this claim.

## B

The defendant's next contention is that the trial court's refusal to submit to the jury certain interrogatories requested by the defendant with respect to the first and second count was error.

To find for the plaintiffs on the first count, the jury had to find (1) that the agreement provided for the return of the deposit in the event the plaintiffs were denied a building permit, and (2) that the plaintiffs were denied a building permit. The defendant raised three special defenses: anticipatory breach; breach of contract; and the plaintiffs' failure to make reasonable efforts in obtaining a building permit. The defendant requested that the trial court submit seven interrogatories regarding the issue of the building permit. The trial court refused to submit any of the requested interrogatories as to the first count to the jury.

The defendant also requested that four interrogatories concerning the removal of tree stumps from the site be submitted with respect to the second count. The

trial court submitted all but the following to the jury: "Do you find that the defendant was justified in not performing said work because of the plaintiffs' anticipatory breach of the Bond for Deed?"

"Where two or more counts have been alleged in a complaint . . . the defendant has the right to save himself from the implication of a general verdict by seeking from the jury answers to apt and proper interrogatories. *Sheeler* v. *Waterbury,* 138 Conn. 111, 114–15, 82 A.2d 359 (1951). In such situations, it is the duty of the trial court, upon request, to submit such interrogatories as would accomplish this purpose. *Pentino* v. *Gallo,* 107 Conn. 242, 244, 140 A. 105 (1928)." *Hartford* v. *Anderson Fairoaks, Inc.,* 7 Conn. App. 591, 594, 510 A.2d 200 (1986). The trial court is given broad discretion regarding the number and content of such interrogatories and it should not permit interrogatories which confuse, mislead or do nothing to aid in the proceedings for a subsequent review. Id., 595.

Whether the plaintiffs tried to obtain and were denied a building permit was an uncomplicated issue raised by the plaintiffs in the first count of their complaint. The plaintiffs' failure to prevail on this issue would have precluded their recovery on that count. Evidence was presented to the jury to enable it to resolve the issues in the first count. The seven interrogatories requested by the defendant would have added little to, and held the potential of complicating the resolution of, a simple factual issue.

Nor did the trial court err in its refusal to submit the defendant's fourth interrogatory. An interrogatory should " 'call for a finding of but a single fact. When practicable each question should be so framed as to call for a categorical answer. Each question should ask for the finding of a fact and never for a conclusion of law.' "

Id. Against these standards, we find that the trial court did not abuse its discretion in refusing to submit the requested interrogatory to the jury. "Do you find the defendant was justified in not performing said work because of the plaintiffs' anticipatory breach of the Bond for Deed?" At best, the interrogatory presents a mixed question of fact and law which, besides being improper, could only have been confusing for the jury.

C·

The defendant's next claims of error involve the trial court's evidentiary rulings. The defendant claims that the court denied its counsel the right to state the grounds of its objection to an evidentiary offer and the right to make a separate and distinct offer of proof, and erred in admitting into evidence certain orders of the department of environmental protection.

We first note that the record reveals that the defendant never raised these claims during the motion to set aside the verdict. "Where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review of that claim is available only if it constitutes plain error. Practice Book § 4185; *Kolich* v. *Shugrue,* 198 Conn. 322, 325, 502 A.2d 918 (1986); *Rokus* v. *Bridgeport,* 191 Conn. 62, 67, 463 A.2d 252 (1983)." *Aksomitas* v. *Aksomitas,* supra, 97. The plain error doctrine is reserved for the most exceptional circumstances in which the record supports a claim that the party has been deprived of a fundamental constitutional right and a fair trial; *Cahill* v. *Board of Education,* 187 Conn. 94, 100, 444 A.2d 907 (1982); or where the error in some way directly affects the outcome of the case. *Berchtold* v. *Maggi,* 191 Conn. 266, 274, 464 A.2d 1 (1983); see also *Smith* v. *Czescel,* 12 Conn. App. 558, 563, 533 A.2d 223 (1987).

Reviewing the record, we find that the trial court's denial of the defendant's request to make an argument

regarding a line of questioning previously precluded by the court was not plain error. The defendant contends that its counsel was denied the right to state the grounds for the admissibility of evidence as to the frequency of Chemlawn trucks spilling their contents. The plaintiffs' counsel objected, stating: "Objection, Your Honor. I really don't think this line of questioning is getting us anywhere." The trial court sustained the objection and, in response to the defendent's counsel's question: "Do I have an opportunity to make an argument, Your Honor?" the court instructed the defendant's counsel to move on to another question. Thereafter, the court noted, for the record, the defendant's exception to its ruling and the trial continued. The plaintiff Raymond Vincunas acknowledged the possibility of a truck spilling its contents and further testified, however, that the problem had never arisen before in connection with the securing of a building permit. After this testimony, it is understandable that the trial court considered further testimony as to the frequency of trucks spilling their contents to be objectionable.

Under these circumstances, the fact that the plaintiffs' counsel did not artfully state the grounds of his objection or that the trial court did not permit further argument on the objection does not constitute plain error.

We similarly find that, in light of the entire proceedings, the trial court did not abuse its discretion in precluding the defendant from making an offer of proof with respect to the admission into evidence of a size-reduced copy of the plaintiffs' site plan. The plaintiffs' counsel claimed that they did not possess the original, and the record suggests that the contents of the reduced copy were identical to those in the original. Defense counsel's objection to the document was based on the best evidence rule. The trial court overruled the defendant's objection and noted the defense counsel's

exception. The court did not respond to the defendant's request of an offer of proof, but counsel neither pressed his request regarding the offer of proof at trial, nor raised the issue in the motion to set aside the verdict. From our review, we conclude that these proceedings do not constitute plain error.

The defendant's further claim of evidentiary error concerns the court's admitting into evidence orders of the DEP. The defendant contends that the trial court erred because the DEP orders were hearsay and inadmissible as business records. We again note that this claim was not raised in the defendant's motion to set aside the verdict and, consequently, our review is limited to determining whether there was plain error. *Kolich* v. *Shugrue,* supra.

We find no plain error. The essence of the DEP orders was that two companies, Dean Machine Products, Inc., and Lydall, Inc., were found to have caused pollution of groundwater in Manchester. The companies were ordered by the DEP to eliminate the discharge of industrial wastewater and to evaluate the extent and magnitude of groundwater contamination caused by past untreated discharges. The defendant contends that the documents, inadmissible as business records, were hearsay with respect to the issue of whether the defendant knew of problems with the well in the MIP. The jury, however, had other independent evidence before it from which it could reasonably have inferred that the defendant knew of the previous contamination problem. Paul Rislich of the state department of health services testified that there had been a pollution problem with the town well in the MIP and that the problem had come to the attention of public authorities. In addition, Robert Young, manager of the town of Manchester water department, testified that there had been "problems with that well with organic chemicals" and that the town officials "did not wish to have further problems." Our review of the record reveals that, at best the DEP orders constituted cumulative evidence.

## D

The defendant's final claim of error is that the court permitted the plaintiffs' counsel to make improper and prejudicial statements to the jury during final argument. This claim requires little discussion. The record does not reflect any objection either during or following the plaintiffs' counsel's final argument. The record merely reflects that the defendant's counsel sought the attention of the court and engaged in an off-the-record discussion. The defendant did not request that the court give a curative instruction, and it never gave the court an opportunity to rule on the allegedly tainted language which it now claims was erroneously allowed. We ordinarily will not review claims of nonconstitutional dimension raised for the first time on appeal. *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576 (1973).[4]

## II

Finally, in their cross appeal, the plaintiffs contend that the trial court erred in granting the defendant's motion for a directed verdict with respect to the CUTPA claim, in ruling that there was no evidence before the jury from which it could have found a nexus between the defendant's conduct and the public interest, and in denying the plaintiffs' motion to set aside the verdict as to the fourth count. We find this claim to be wholly without merit and decline to accept the plaintiffs' offer to reconsider the rule precluding the retroactive application of the rule which eliminates the nexus requirement in CUTPA claims. See *Rotophone, Inc.* v. *Danbury Hospital,* 13 Conn. App. 230, 233, 535 A.2d 830 (1988); *Fortini* v. *New England Log Homes, Inc.,* 4 Conn. App. 132, 137 n.1, 492 A.2d 545 (1985).

There is no error.

In this opinion the other judges concurred.

---

[4] Additionally, the defendant failed to raise this claim in its motion to set aside the verdict and we find that, in any event, there is no plain error.