[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in the present case are Richard and Marylou Solomon; the defendants are WMN Associates (WMN), a corporation in the business of building and selling residential buildings, Theodore Wurz [Wurz], vice president and secretary of WMN, and Paul Materazzo [Materazzo], president and director of WMN.
On March 18, 1991, the plaintiffs filed an eight count complaint containing the following factual allegations: On or about April 5, 1988, Richard Solomon and WMN entered into a written agreement [agreement] that provided, inter alia, that WMN would complete the construction of a single-family dwelling in Avon, Connecticut, and deliver to the plaintiffs a warranty deed "to convey to the Buyer or Buyer's assigns the absolute fee of the premises free of all encumbrances . . . in compliance with any and all provisions of any ordinance, municipal regulation or public or private law." In addition, the agreement required WMN to fill the front yard of the premises to create ground slope.
On or about August 30, 1988, the plaintiffs paid to WMN the purchase price stated in the agreement and WMN delivered a warranty deed for the property to the plaintiffs. On or about that same date, the defendants executed an escrow agreement that provided that each defendant jointly and severally agreed to complete certain unfinished items, which were listed on Schedule A attached to the escrow agreement.
In September, 1988, the plaintiffs were informed by CT Page 10732 the Avon Inlands Wetlands Commission [Commission] that a portion of the front yard had been filled in violation of state and/or local law. Later that month, at the direction of the Commission, 75-80% of the landfill was removed from the front yard. In addition, subsequent to August 30, 1988, the plaintiffs discovered a number of defects in the premises.
The complaint is drawn in 8 counts:
Count One alleges breach of contract against WMN.
Count Two alleges breach of express warranty against WMN.
Count Three alleges breach of implied warranty against WMN.
Count Four alleges negligence against WMN.
Count Five alleges negligent misrepresentation against WMN and Wurz.
Count Six alleges fraudulent misrepresentation Wurz.
Count Seven alleges violation of CUTPA against all defendants.
Count Eight alleges breach of escrow agreement against all defendants.
The defendants in their answer have, in effect, denied all the essential allegations of the complaint.
I. Count One: Breach of Contract as to WMN.
The plaintiffs allege that WMN breached the agreement by failing to complete the construction of the premises in accordance with its terms, failing to perform the construction work in a workman-like manner, and failing to deliver a warranty deed and construct the home in compliance with local ordinances, municipal regulations, or public or private laws.
The agreement refers to Richard Solomon as "Buyer" and WMN as "Builder" and provides, in pertinent part: CT Page 10733
 I. Builder shall complete a . . . single-family family home located . . . [in] Avon, Connecticut which is now partially complete for . . . $530,000.00 . . . .
 VII. [T]he buyer shall pay to the builder the sum of $50,000.00 as a deposit to be credited toward the purchase price . . . . If any work subject of this Contract remains incomplete at the time of closing, a reasonable escrow shall be discussed by the buyer and builder . . . .
 IX. The Builder shall deliver to the Buyer a full covenant Connecticut form of warranty deed in proper form . . . at Builder's expense to convey to the Buyer or Buyer's assigns the absolute fee of the for premises free of all encumbrances (except for the common drive) and in compliance with any and all provisions of any ordinance, municipal regulation or public or private law.
The agreement also provides that WMN shall make several structural changes enumerated therein as per Solomon's request. The agreement is signed by Richard Solomon and Wurz, as secretary of WMN.
In determining the scope of a contract, "[t]he plain, clear language of the contract must be accorded its logical effect." Four D's, Inc. v. Mattera, 25 Conn. App. 308,313, 594 A.2d 484 (1991). The parties' intent "is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Citations omitted; internal quotation marks omitted.) E F Construction Co.v. Rissil Construction Associates, Inc., 181 Conn. 317,320, 435 A.2d 343 (1980). "[I]n situations in which the parties have their agreement in writing, their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained." (Internal quotation marks omitted.) Thompson Peck, Inc.v. Harbor Marine Contracting Corporation, 203 Conn. 123,130-31, 523 A.2d 1266 (1987). Generally, the question of the parties' intent is "a question of fact, reversible only if the trier of fact could not reasonably have arrived at CT Page 10734 the conclusion it had reached." Id., 130. "Where[, however,] there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Id., 131. In ascertaining the intent of the parties, the court must consider "the whole contract and all relevant provisions together" as well as "the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." (Citations omitted; internal quotation marks omitted.) Harvey v.Daddona, 29 Conn. App. 369, 375, 615 A.2d 177 (1992). "[T]he language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Barnard v.Barnard, 214 Conn. 99, 110, 570 A.2d 690 (1990).
The court finds that there was a breach of contract by WMN because of its failure to construct the premises in accordance with its terms, in that certain of the work was not performed in a workman-like manner and that the subject was not constructed in compliance with certain ordinances or laws, namely the Inland-Wetlands Act.
Judgment may enter for the plaintiffs against the defendant WMN on this count.
II. Counts Two and Three: Breach of Express and ImpliedWarranties as to WMN, General Statutes §§ 47-117 and 47-118
In Count Two, the plaintiffs allege that WMN breached an express warranty, made pursuant to General Statutes § 47-117, that the premises would be constructed and repaired in a good and workman-like manner and that the construction work would be performed according to the plans and specifications of the contract. In count three, the plaintiffs allege that WMN breached an implied warranty, made pursuant to General Statutes § 47-118, that the premises were free from faulty materials, constructed in a workman-like manner, and constructed according to sound engineering standards.
General Statutes § 47-117 provides, in part:
 (a) Express warranties by a vendor are created as follows: (1) Any written . . . promise CT Page 10735 which relates to the improvement and is made a part of the basis of the bargain between the vendor and the purchaser shall create an express warranty that the improvement conforms to such . . . promise; (2) any written description of the improvement, including plans and specifications thereof which is made a part of the basis of the bargain between the vendor and the purchaser shall create an express warranty that the improvement conforms to such description; and (3) any sample or model which is made a part of the basis of the bargain between the vendor and the purchaser shall create an express warranty that the improvement conforms substantially to such sample or model.
 (b) No formal words, such as "warranty" or "guarantee", nor any specific intention to make a warranty shall be necessary to create an express warranty . . . .
General Statutes § 47-118 provides, in part:
 (a) In every sale of an improvement by a vendor to a purchaser, except as provided in subsection (b) of this section or excluded or modified pursuant to subsection (d), warranties are implied that the improvement is: (1) Free from faulty materials; (2) constructed according to sound engineering standards; (3) constructed in a workman-like manner . . . .
 (b) The implied warranties of subsection (a) of this section shall not apply to any condition that an inspection of the premises would reveal to a reasonably diligent purchaser at the time the contract is signed.
"`It is a cardinal rule of construction that statutes are to be construed so that they carry out the intent of the legislature. The intent is to be ascertained from the language of the statute itself, if the language is plain and unambiguous.'" Cashman v. Calvo, 196 Conn. 509, 512, CT Page 10736493 A.2d 891 (1985), quoting Hartford Hospital v. Hartford,160 Conn. 370, 375, 279 A.2d 561 (1971). "The purpose of [General Statutes § 47-117] is to afford protection to new home buyers. Any other interpretation would thwart the purpose of the act as well as the intent of the legislature." Fava v. Arrigoni, 35 Conn. Sup. 177, 179,402 A.2d 356 (Super.Ct. 1979). General Statutes § 47-118
"impose[s] liability under an implied warranty on the builder/vendor of a new home in favor of the purchaser of any improved real estate." Beckman v. Jalich Homes, Inc.,190 Conn. 299, 307, 460 A.2d 488 (1983); see Krawiec v.Blake Manor Development Corporation, 26 Conn. App. 601,605, 602 A.2d 1062 (1992). "[T]he logical reading of the definitions contained in 47-116, in conjunction with 47-118
setting forth the implied warranties, leads us to conclude that the legislature intended that the implied warranties apply to both the newly constructed single-family dwelling and the lot upon which it sits when they are sold to a purchaser as a package by the builder/vendor." Krawiec v.Blake Manor Development Corporation, supra, 606.
Where the house and lot are sold together "the implied warranties are breached not only because of structural defects but also because of the unsuitability of the lot upon which the house was built." Id. "Placing on the builder the onus of furnishing the buyer with a functional home and a suitable house site encourages the builder to exercise greater care in the selection of building sites." Id. In addition, "because the developer is in a better position than the purchaser to prevent problems relating to soil and drainage defects in the soil, the implied warranties of good workmanship should extend to those defects." Id.
The court finds that WMN did not construct the residence in accordance with the contract and did not provide a suitable home site as set forth in the agreement. Therefore, the plaintiffs have proven by a preponderance of the evidence that there was a breach of express and implied warranty by WMN.
Judgment may enter for the plaintiffs against the, defendant WMN on Count Two and Count Three.
III. Count Four: Negligence as to WMN
CT Page 10737
In count four, the plaintiffs allege that WMN acted negligently in that it breached its duty to perform the promised work, and repair defective work, in a good and workmanlike manner, thus causing damages to the plaintiffs.
Liability may arise for the breach of a duty that arises out of a contractual relationship. Urban v.Hartford Gas Co., 139 Conn. 301, 304, 93 A.2d 292 (1952); see Neiditz v. Morton S. Fine Associates, Inc., 2 Conn. App. 322,328 n. 7, 479 A.2d 249 (1984). "Even though there may not be a breach of contract, liability may arise because of injury resulting from negligence occurring in the course of performance of the contract." Johnson v.Flammia, 169 Conn. 491, 496, 363 A.2d 1048 (1975).
In the present case, when WMN undertook to complete the house and deliver a warranty deed for the premises to the plaintiffs, WMN was under a duty to exercise that degree of care which a skilled home builder of ordinary prudence would have exercised under the same or similar conditions. See id.; Goodrich Oil Burner Mfg. Co. v.Cooke, 126 Conn. 551, 553, 12 A.2d 833 (1940).
The court finds that WMN negligently breached its duty to perform the work as set out in the contract to perform the promised work and repair defective work in a good and workmanlike manner and thus caused damage to the plaintiffs. Judgment may enter for the plaintiffs on this count.
IV. Count Five: Negligent Misrepresentation as to WMN and Wurz
In count five, the plaintiffs allege that WMN and Wurz made negligent misrepresentations to the plaintiffs as to the quality of the front yard; specifically, the plaintiffs allege that WMN and Wurz failed to disclose that a portion of the yard was designated as wetlands by the Commission as defined in General Statutes § 22a-29, and that the front yard had been filled without the necessary permit in violation of local municipal and/or state law.
"This court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact `may be actionable if CT Page 10738 the declarant has the means of knowing, ought to know or has a duty of knowing the truth.'" D'Ulisse-Cupo v. Boardof Directors of Notre Dame High School, 202 Conn. 206, 217,520 A.2d 217 (1987), quoting Richard v. A. Waldman Sons,Inc., 155 Conn. 343, 346, 232 A.2d 307 (1967). An allegation of negligent misrepresentation requires proof by a preponderance of the evidence. Rego v. Connecticut Insur.Placement Facility, 22 Conn. App. 428, 430, 577 A.2d 1105
(1990). "Allegations such as misrepresentation and fraud present issues of fact." (Citations omitted.) Miller v.Bourgoin, 28 Conn. App. 491, 497, 613 A.2d 292 (1992). Moreover, "[w]hether evidence supports a claim of fraudulent or negligent misrepresentation is a question of fact." McClintock v. Rivard, 219 Conn. 417, 427,593 A.2d 1375 (1991).
The plaintiffs have failed to prove this count by a preponderance of the evidence that negligent representations were made by either authorized officials of WMN or by Wurz.
Judgment on this count may enter for the defendants.
V. Count Six: Fraudulent Misrepresentation as to Wurz
In count six, the plaintiffs assert that Wurz made fraudulent misrepresentations concerning the front yard, with the intent to induce the plaintiffs, upon which the plaintiffs reasonably relied.
 The elements of fraudulent misrepresentation are as follows: (1) a false representation must be made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the false representation to her detriment.
(Citation omitted.) Dorsey v. Mancuso, 23 Conn. App. 629,633, 583 A.2d 646 (1990); see Miller v. Appleby, 183 Conn. 51,54-55, 438 A.2d 811 (1981). A claim of fraud must be proven by "clear and satisfactory evidence." Miller v.Appleby, supra, 55. The defendants' knowledge is an element of both fraudulent misrepresentation and fraudulent CT Page 10739 concealment. See Marchand v. Presutti, 7 Conn. App. 643,645, 509 A.2d 1092 (1986). In order to prove fraudulent misrepresentation, the plaintiffs do not have to prove knowledge on the part of the defendants, "only that the defendants representation was made recklessly, withoutbelief in its truth." (Citations omitted; emphasis in original) O'Leary v. Industrial Park Corporation, 14 Conn. App. 425,432, 542 A.2d 333 (1988).
"The failure to disclose known facts and a request or a circumstance which imposes a duty to speak, forms the essence of fraudulent misrepresentation." (Citation omitted) O'Leary v. Industrial Park Corporation, supra,14 Conn. App. 433.
"We have had occasion to point out that where a defendant has special means of knowledge, and a plaintiff can under the circumstances attribute to the former accurate knowledge of what is represented, the plaintiff need not show the actual knowledge of the falsity of the representation." (Citations omitted) Miller v. Appleby,
supra, 183 Conn. 56. In addition, where the plaintiffs are "not on equal footing with the defendant, and d[o] not have equal access to . . . information [they may] . . . rely on the defendant's representations." Maturo v. Gerard,196 Conn. 584, 588, 494 A.2d 1199 (1985).
The plaintiffs have failed to prove by "clear and satisfactory evidence" that the defendant Wurz made a fraudulent misrepresentation to the plaintiffs. Judgment on this count may enter for the defendant Wurz.
VI. Count Seven: Violation of CUTPA as to All Defendants
In count seven, the plaintiffs allege that the defendants violated the Connecticut Unfair Trade Practices Act [CUTPA], General Statutes § 42-110a et seq.
General Statutes § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110g(a) provides in part that "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by CT Page 10740 section 42-110b, may bring an action . . . to recover actual damages." Interpretation of CUTPA by the courts "shall be guided by interpretations given by the Federal Trade Commission Act . . . ." General Statutes § 42-110b(b).
CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. Web Press Services Corp. v. New London Motors,Inc., 203 Conn. 342, 354, 525 A.2d 57 (1987).
 In determining whether a practice violates CUTPA, we use the following criteria: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers[,] competitors or other businessmen."
Dadonna v. Liberty Mobile Home Sales, 209 Conn. 243, 254,550 A.2d 1061 (1988).
The above legal test is called the "cigarette rule." There has been some question as to whether all three prongs of the "cigarette rule" must be met to demonstrate a CUTPA satisfaction or one or two prongs is sufficient: "Our Supreme Court has noted that while in certain cases all three criteria set forth in the "Cigarette Rule" may be required to be satisfied, generally all need not be satisfied to support a finding of unfairness." Krawiec v.Blake Manor Development Corp., supra, 26 Conn. App. 607. "[C]onsumer injury is the primary focus of the FTC act" and "regulation is permissible only if a practice causes unjustified injury that is substantial." (Citations omitted; internal quotation marks omitted.) A-G Foods,Inc. v. Pepperidge Farms, Inc., 216 Conn. 200, 579, 69 (1990).
Scienter is not a requirement for the establishment of CT Page 10741 a CUTPA violation. Eamiello v. Liberty Mobile Home Sales,Inc., 208 Conn. 653, 546 A.2d 805 (1988). Under CUTPA it is not necessary that the plaintiff prove reliance or that representation become part of the basis of the bargain.Web Press Services Corp. v. New London Motors, Inc., supra,203 Conn. 484. "[T]he subjective good faith of one who has in fact performed an unfair or deceptive act is not a defense to a CUTPA violation . . . ." Eamiello v. LibertyMobile Home Sales, Inc., supra, 208 Conn. 654. "The distinction between CUTPA and fraudulent misrepresentation is that while the plaintiff must prove reliance an alleged fraudulent misrepresentation, reliance is not an element of a CUTPA claim." Gold v. University of Bridgeport School ofLaw, supra, 19 Conn. App. 381.
Allegations that the seller of real estate wrongfully withheld the plaintiff/buyer's deposit after repeated demands is sufficient to state a cause of action under CUTPA. Piscatelli v. Hird, 3 Conn. L. Rptr. 453 (April 1, 1991, McKeever, J.). Real estate development is a trade or commerce covered by CUTPA. Tremblay v. Patenaude,7 Conn. L. Rptr. 201 (August 6, 1992, Purtill, J.).
The court finds that the defendants have not violated several of the prongs of the "cigarette rule" namely, the acts of the defendant did not violate public policy and/or were not immoral, oppressive or unscrupulous, and therefore the plaintiffs have failed to prove by a preponderance of the evidence a violation of CUTPA.
Judgment may enter for the defendants on this count.
Count Eight. Breach of the escrow agreement as to all defendants.
The escrow agreement (Plaintiff's Exhibit) provides in part that WMN, Wurz, individually and Materazzo, individually, jointly and severally agree to complete the items left unfinished as listed in Schedule A attached to the Escrow Agreement. It is agreed that to have held in escrow $5,000.00 which will be released to WMN upon completion of all 28 items listed in Schedule A for repair or completion. Many of the items have not been repaired or completed. The Escrow Agreement is signed by Materazzo individually and as president of WMN and Wurz CT Page 10742 individually.
Judgment may enter for the plaintiffs against all defendants on this count.
Rescission
As an alternative to seeking damages under the contract (Plaintiff's Exhibit "B"), the plaintiffs' are seeking a rescission of the agreement.
"Rescission, simply stated, is the unmaking of a contract. It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract."Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 299,478 A.2d 257 (1984). "If rescission is chosen as a remedy, it usually operates as a waiver of the right to sue for damages." (Citations omitted.) Altberg v. Paul Kovacs TireShop, Inc., 31 Conn. App. 634, 642, 626 A.2d 1328 (1993). Generally, a judgment will not stand if both damages and rescission are awarded. Duksa v. Middletown, 192 Conn. 191,206, 472 A.2d 1 (1984).
"Under Connecticut law, as a condition precedent to rescission, the parties to a contract must be restored to their original position as nearly as possible." (Citations omitted.) Barco Auto Leasing Corporation v. House,202 Conn. 106, 113, 520 A.2d 162 (1987).
The court finds that because the plaintiffs have installed many improvements in their residence at their own expense, it would be difficult, if not impossible, to place the parties in the same situation as existed just prior to the execution of the contract. For this reason the plaintiffs' request for rescission of the contract is denied.
Judgment having been rendered in favor of the plaintiffs against WMN on Counts One, Two, Three and Four and against all defendants on Court Eight, the matter of damages must be addressed.
Damages for Counts One, Two, Three and Four will be CT Page 10743 considered jointly because although many counts have been pleaded, the damages are merged.
John Schipani, a construction management consultant, testified as an expert witness for the plaintiffs. He inspected the subject premises on July 10, 1990, almost two years after the plaintiffs acquired title. His report (Plaintiff's Exhibit "PPP") indicates the broad scope of repairs needed; to correct the defects in the Solomon residence. Mr. Schipani estimated the cost of repairs to be $64,287.30 as of the date of his report July 12, 1990. He further testified that since that date, repair costs have risen considerably. However, any attempt to set a current figure on the repairs would be pure speculation.
The defendant did not successfully rebut Schipani's testimony.
Judgment may enter for the plaintiffs on the first, second, third and fourth counts for $64,287.30 against defendant WMN Associates, Inc. only.
The Eighth Count of the complaint concerns the Escrow Agreement (Plaintiffs' Exhibit "C") dated August 30, 1988, signed by Materazzo as President of WMN Associates and by Theodore Wurz and Paul Materazzo individually. Five Thousand Dollars ($5,000.00) is held in escrow by plaintiff's attorneys to be released upon completion of all items by the signers of the agreement except the brick work around the swimming pool by June 30, 1989.
The court finds that the work has not been completed on all the items, and therefore the sum of Five Thousand Dollars ($5,000.00) shall be forfeited to the plaintiffs herein.
Judgment on the Eighth Count may enter for the plaintiffs against all of the defendants.
Harold M. Missal State Judge Referee CT Page 10744