CHERI L. BILODEAU *v.* CITY OF BRISTOL
(13154)

FOTI, HEIMAN and HENNESSY, Js.

Argued April 17—decision released July 18, 1995

*Kathryn Calibey,* for the appellant (plaintiff).

*Scott M. Karsten,* for the appellee (defendant).

HEIMAN, J. In this action sounding in nuisance, the plaintiff appeals from the judgment rendered after the trial court directed the jury to return a verdict in favor of the defendant. On appeal, the plaintiff claims that the trial court improperly (1) directed the jury to return a defendant's verdict, (2) refused to permit the introduction into evidence of § 16-1 (b) of the code of the city of Bristol and (3) effectively barred the plaintiff from arguing money damages pursuant to General Statutes § 52-216b. We agree that the trial court acted improperly in directing a verdict in favor of the defendant and reverse the judgment of the trial court.

The jury could reasonably have found the following facts. On May 16, 1989, at approximately 7:30 p.m., the plaintiff was driving a motor vehicle west on Memorial Boulevard near its intersection with Mellon Street, both public highways in the city of Bristol. As the plaintiff was proceeding on Memorial Boulevard, a large branch that overhung the west bound lane of travel from the north side of the highway fell from an oak tree and struck the roof of the plaintiff's automobile, crushing the roof of the car almost to the level of the door. After the branch hit the car roof, the plaintiff's automobile crossed the median divider in the center of Memorial Boulevard, grazed a pole and ultimately struck another oak tree where the vehicle came to rest.

As a result of the incident, the plaintiff suffered various injuries, including lacerations on her nose and forehead, a displaced and comminuted left clavicle fracture, fractures of the right side sixth, seventh and eighth ribs, a left ankle sprain, and pain in the midback. The injuries to the shoulder girdle, thoraco-scapula, midback area, and left ankle are permanent. As a result of these injuries, the plaintiff was out of work from the date of the accident until August 14, 1989, and incurred various expenses for hospital and medical care.

The branch that struck the plaintiff had broken off of one of the many oak trees that had been planted by the city of Bristol along Memorial Boulevard as a veterans memorial. It appeared to be in poor health and was rotted in the area of pruning cuts.

The property on which the trees were planted belongs to the defendant and employees of the defendant are responsible for maintaining and caring for the trees along Memorial Boulevard. The only records available revealed that the oaks on Memorial Boulevard were pruned in the spring of 1986. It is uncertain as to when any work was done on that area prior to that time. The pruning was carried out in flush cuts and did not comport with generally accepted methods for the pruning of such oak trees. Such improper pruning can create large wounds in the trees, which provide points of entry for decay. The branch that fell on the plaintiff's automobile showed pruning cuts in close proximity; the decay between the cuts had coalesced, which weakened the entire branch.

The case was submitted to the jury with interrogatories and the jury returned a plaintiff's verdict in the amount of $50,000 and answers to the interrogatories. The trial court accepted the answers to the interrogatories but declined to accept the plaintiff's verdict. The trial court then directed the jury to return a verdict

in favor of the defendant and the trial court accepted and rendered judgment on the directed verdict. The plaintiff's motion to set the directed verdict aside was denied. This appeal followed.

I

The plaintiff first asserts that the trial court improperly directed a verdict in favor of the defendant on the basis of an apparent inconsistency between the jury's answer to one of the interrogatories submitted to it and the plaintiff's verdict. The plaintiff asserts that under the circumstances of this case the trial court should not have directed a verdict but should have invalidated the entire verdict proceedings or returned the jury for further deliberations after a recharge as to the law in order to dispel any confusion that might have existed. We agree.

Certain additional procedural facts are necessary to a proper resolution of this claim. The trial court submitted to the jury six interrogatories.[1] In the course of its charge, the trial court instructed the jury that the burden was on the plaintiff to establish by a fair preponderance of the evidence the five elements of nuisance and also that the nuisance was created by the positive act of the defendant or its employees.[2] The trial

---

[1] The interrogatories submitted to the jury were as follows:

"1. Did the defendant create a condition that had a natural tendency to create damage and inflict injury on persons or property?

"2. If such condition was created was it a continuous one?

"3. Was the defendant's use of its land unreasonable?

"4. Was the existence of the condition created the proximate cause of the plaintiff's injuries?

"5. Was the plaintiff in the exercise of a public right when she was injured?

"6. Were the pruning cuts a positive act of the City or its employees?"

[2] The trial court specifically charged the jury regarding the definition and elements of a claim for nuisance: "A nuisance generally may be defined as a condition the natural tendency of which is to create danger and inflict injury upon person or property. To establish a nuisance claim against a municipality, we need five separate things. The plaintiff has to prove five

court did not, however, expressly instruct the jury that it had to answer each of the interrogatories in the

things. The condition that is created must have a natural tendency to create danger and inflict injury upon person or property. That's number one. The danger created and the condition of that danger must be continuous. All nuisance cases of the kind that we are talking about are in regard to use of the land. This case is in regard to use of land by the city of Bristol, basically of that strip along the side of the boulevard or strips on each side. Actually, it's only about one side in our case because that's the only place the tree in question was. But the number three on our list of five is, the use of the land was unreasonable, is what the city was doing was unreasonable. Four, the existence of the nuisance was the proximate cause of the plaintiff's injury. And, five, the plaintiff was in the exercise of some public right.

\* \* \*

"To establish liability against a municipality, it must be shown that the condition was created by some positive act of the municipality or its employees, and I might say to you if I talk about the city or the municipality, it is responsible and held responsible for the acts of all of its employees unless you find from the evidence in this case that some, one of these people, was out on a frolic and detour of his own but I don't think we have anything like that. I think the trimmers and tree people were pretty clearly—you don't have to find it but they were acting in a regular city capacity for the city. If you find that they did these things, then the city is responsible for what they did.

"In this place, the plaintiff claims that the city created a dangerous condition and, additionally, the plaintiff says that the city maintained the dangerous condition. You heard the testimony from the expert witnesses and from the city personnel. If you find that the dangerous condition was created by the cuts, the pruning methods used by the city, then the plaintiff will have proven that the condition was created by a positive act. What the city created, according to the plaintiff, I guess, is that the city created a wound on the branch of a tree because it didn't cut it far enough out, cut it too bad, something like that. And the question is, in regard to reasonable use of the land, is it reasonable for the city to do that, to do what it did, to make this cut, trim this tree and I guess it trimmed other trees, but they are not part of our case. What the question for you that you have to have in mind is what dangerous condition, after the cut continued, the wounds, but the damage done by the wounds, allowed the decay to enter, according to the witnesses, over a period of four to eight to even, I heard, twenty years, is that a continuation of the danger or is something new being added?

\* \* \*

"To constitute a nuisance in the use if land, it must appear not only that a certain condition by its very nature is likely to cause injury but the use is unreasonable. Whether a particular condition of which the plaintiff [says]

affirmative before it could return a verdict in favor of the plaintiff.[3]

The jury returned with the answers to the six interrogatories and with a plaintiff's verdict in the amount of $50,000.[4] The trial court examined the interrogato-

constitutes a nuisance does not depend merely upon the inherent nature of the conditions, that involves a consideration of all relevant facts, location, beneficial for the memorial, the city, the shade, the nice appearance, the aesthetics, all of those together with the size of the tree, etc. It is your role to determine whether the condition created, if any, was unreasonable either due to the nature of the branch itself or due to the city's maintenance of it and that condition, the plaintiff must also prove to you by a fair preponderance of the evidence, that the fall of the branch, the nuisance, the condition, caused her injuries. I don't think there is any question that the fall of the branch caused this accident but that's only half of the causation picture. Caused the accident—I don't think that [defendant's counsel] would disagree for a minute that the falling branch caused the accident. He doesn't agree as to why it fell or the reasonableness and that sort of thing but it did fall on her car, I guess."

[3] In addition to the trial court's charge on the elements of the cause of action as set out in footnote 2, the trial court also addressed the issue of the interrogatories as follows: "Now, the last thing we have on our agenda here is the interrogatories, which I think I gave you as well. They are entitled interrogatories to jury, and they are to help us help you in focusing on our case and I'm going to go over those interrogatories one at a time. First one is, did the defendant create a condition that had a natural tendency to create damage and inflict injuries on persons or property? You will see that these six, the first five anyway, are our first five items that the plaintiff must prove in regard to proving a nuisance case and she is required to prove those first five.

"So, I ask you to answer each of them, if the condition was created, was it continuous, was the defendant's use of the land unreasonable . . . [w]as the existence of the condition created the proximate cause of the plaintiff's injuries and, in regard to that one, I would tell you in order to be the proximate cause, it must be a substantial factor but it need not be the sole, substantial factor. And, was the plaintiff in the exercise of the public right when she was injured. I think you could put a yes in that box without any complaint. The last one is a question that, as I indicated to you in the charge, the creation of this nuisance must be by a positive act and so the question is, were the pruning cuts a positive act of the city or its employees?"

[4] This verdict included $16,000 in compensation for economic damages and $34,000 for noneconomic damages.

ries and found that the jury had answered five of the six in the affirmative but had answered interrogatory number three, "Was the use of the land unreasonable?" in the negative. The verdict was read by the clerk but was not ordered accepted and recorded by the trial court. The trial court directed the clerk to read the interrogatories and the answers to them as returned by the jury. Upon inquiry after the answers to the interrogatories were read to them, the jurors indicated that the answers read constituted their answers to the interrogatories. The trial court ordered the answers to the interrogatories accepted and recorded and directed that the answers as accepted and recorded be read again. The jury again acknowledged the answers to the interrogatories.

The trial court excused the jury from the courtroom and heard argument by counsel regarding the effect of the inconsistency between the answers to the interrogatories and the verdict. After consideration, the trial court recalled the jury and informed it that its finding that the use of the land was not unreasonable necessitated a verdict for the defendant.[5] The jury complied

---

[5] The trial court stated as follows: "Ladies and gentlemen, we have your verdict for the plaintiff, which I have not accepted, and the reason I have not accepted it is because in answers to the interrogatories you said, "No," in regard to interrogatory number 3. As I directed you in the charge, in order to find for the plaintiff you had to say yes to all five of those first questions and what you have said is the defendant's use of the land was reasonable because you said it was not unreasonable. If it's not unreasonable, then the verdict must be for the defendants. Therefore, I must return you to the jury room with a direction that, in accordance with your interrogatories, to which you all assented twice, you must come in with a verdict for the defendant and I so direct you.

"Would you take the jury out and give them the defendant's verdict form?"

Despite the contrary contentions of the trial court, the trial court did not expressly charge the jury that it must answer all of the interrogatories in the affirmative in order to find for the plaintiff. This failure further evidences the jury's unawareness or confusion regarding the relationship between the interrogatories and the verdict.

with the court's direction and returned a verdict in favor of the defendant.

"The rules controlling appellate review of a directed verdict are well settled. Directed verdicts are not generally favored. A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion." (Internal quotation marks omitted.) *Sokolowski* v. *Medi Mart, Inc.*, 24 Conn. App. 276, 285–86, 587 A.2d 1056 (1991); see also *Bleich* v. *Ortiz*, 196 Conn. 498, 500–501, 493 A.2d 236 (1985). We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. *Giles* v. *New Haven*, 228 Conn. 441, 444, 636 A.2d 1335 (1994); *Berry* v. *Loiseau*, 223 Conn. 786, 819–20, 614 A.2d 414 (1992).

In light of these standards, we conclude that the trial court improperly directed a verdict in favor of the defendant.

"To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as a matter of law judgment could only be rendered for the party against whom the [general] verdict was found . . . ." (Internal quotation marks omitted.) *Sullivan* v. *Norwalk*, 28 Conn. App. 449, 459, 612 A.2d 114 (1992); see *Belchak* v. *New York, N. H. & H. R. Co.*, 119 Conn. 630, 634, 179 A. 95 (1935); *Murteza* v. *State*, 7 Conn. App. 196, 201, 508 A.2d 449 (1986).

Here, the trial court should not have directed a verdict in favor of the defendant because the jury's initial response to the interrogatories did not conclusively negate an essential element of the plaintiff's cause of action. The jury's answer to the third interrogatory was

clearly at variance with its responses to the other interrogatories and its rendition of a plaintiff's verdict, and, thus, the jury never made a conclusive finding that the use of the land by the defendant was reasonable.

Where answers to interrogatories are inconsistent, the trial court has the duty to attempt to harmonize the answers. *Norrie* v. *Heil Co.*, 203 Conn. 594, 606, 525 A.2d 1332 (1987). Here, the trial court made no attempt to harmonize the answer, nor did it, as caution dictated, return the jury to consider its verdict in light of the obvious inconsistency. See General Statutes § 52-223. Further, considering the fact that the trial court had not specifically instructed the jury that it needed to answer all of the interrogatories in the affirmative in order to return a plaintiff's verdict, caution dictated that the jury be so instructed and given an opportunity to make its verdict clear. See *Robbins* v. *Van Gilder*, 225 Conn. 238, 252, 622 A.2d 555 (1993).

Section 52-223[6] provides the trial court with the authority to return the jury to consider its verdict a second or third time if the court judges that the jury has mistaken the evidence or has brought in a verdict contrary to the direction of the court in a matter of law. Here, while the trial court did not expressly charge the jury that it could return a plaintiff's verdict only if it answered all six interrogatories in the affirmative, it had done so by implication. Thus, it clearly appears that the verdict of the jury was facially contrary to the direction of the court in a matter of law. See General Statutes § 52-223. The rules of prac-

[6] General Statutes § 52-223 provides: "The court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration."

tice provide further authority to the trial court to return the jury for further consideration of its verdict. Practice Book § 311.[7] The trial court here did not avail itself of either modality.

Thus, we conclude that under the circumstances of this case, the trial court acted improperly in directing a verdict for the defendant.

## II

The plaintiff next asserts that the trial court improperly excluded from evidence § 16-1 (b) of the Bristol code. We are unpersuaded.[8]

In the course of the trial, the plaintiff attempted to introduce into evidence § 16-1 (b) of the Bristol city code concerning the establishment of a proper memorial to Bristol's veterans of all wars.[9] The specific portion of the code that the plaintiff sought to have admitted into evidence required the board of park commissioners to maintain the park as a memorial and to preserve the stand of oaks along the boulevard. The trial court declined to admit the document, stating that in order to be admissible in a nuisance case there must be some causal relationship between the ordinance and the injury.

---

[7] Practice Book § 311 provides: "The court may, if it determines that the jury have mistaken the evidence in the cause and have brought in a verdict contrary to it, or have brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for like reason may return them to a third consideration, and no more."

[8] Although our resolution of the plaintiff's claim that the trial court improperly directed a verdict for the defendant is dispositive of this appeal, we address this evidentiary claim because it is likely to occur in the course of a new trial. We do not, however, address the plaintiff's third claim that the trial court "effectively barred the plaintiff from arguing damages to the jury," as it is unlikely to occur on remand. See *Falby* v. *Zarembski*, 221 Conn. 14, 26–27, 602 A.2d 1 (1992).

[9] Section 16-1 (b) of the code of the city of Bristol provides in pertinent part: "The board of park commissioners shall give special care in maintaining said park as a fitting memorial and preserving the rows of memorial oaks which border the boulevard. . . ."

"The rules for determining the admissibility of evidence are well settled. The trial court has broad discretion to determine both the relevancy and remoteness of evidence. . . . Only upon a showing of a clear abuse of discretion will this court set aside on appeal rulings on evidentiary matters. . . . In considering the relevancy of evidence, we ask whether it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. . . . Because there is no precise and universal test of relevancy, however, the question must ultimately be addressed on a case-by-case basis in accordance with the teachings of reason and judicial experience." (Internal quotation marks omitted.) *Larsen Chelsea Realty Co.* v. *Larsen*, 232 Conn. 480, 520–21, 656 A.2d 1009 (1995), quoting *Dunham* v. *Dunham*, 204 Conn. 303, 324, 528 A.2d 1123 (1987).

Applying these principles, we conclude that the trial court did not abuse its considerable discretion in sustaining the defendant's objection to the offer into evidence of § 16-1 (b) of the Bristol code. The establishment and preservation of the park as a memorial is unconnected to the claims of the plaintiff and the trial court properly exercised its discretion to exclude the evidence.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.