## LORAINE MALLINSON v. JAY I. BLACK
### (14128)

Heiman, Spear and Hennessy, Js.

Argued January 11—officially released May 14, 1996

*Bernard Pellegrino*, for the appellant (plaintiff).

*Lorinda S. Coon*, with whom was *Elizabeth Fairbanks Flynn*, for the appellee (defendant).

HEIMAN, J. In this action sounding in negligence, the plaintiff appeals from the judgment rendered after the trial court directed the jury to return a verdict in favor of the defendant. On appeal, the plaintiff claims that the trial court improperly (1) directed a verdict for the defendant after the jury had returned two contradictory and inconsistent verdicts, (2) directed a verdict for the defendant after the second verdict returned by the jury was, in and of itself, inconsistent, (3) posed an interrogatory to the jury prior to its reconsideration of its first verdict, (4) directed a verdict for the defendant before an interrogatory posed to the jury had been answered, and (5) directed a verdict for the defendant when it was clear that the jury was confused and that the jury's verdicts were illogical and unreasonable in light of the instructions given to it. We affirm the judgment of the trial court.

The following allegations are contained in the plaintiff's "replacement amended complaint." The plaintiff claimed that she retained the defendant, a professional engineer and land surveyor, to make all necessary surveys, examinations and investigations to locate the divisional lines of the plaintiff's tract of land located in Orange. According to the plaintiff, she informed the defendant that she intended to erect a single-family house in the center of the tract and to leave enough

room on the tract for a septic system and an in-ground swimming pool adjacent to the house.

The plaintiff asserted that the defendant accepted the engagement and undertook to establish the correct location of the property's divisional lines. The plaintiff claimed that the defendant performed the work in a negligent manner and thereby failed to establish properly the north and south boundaries of the property. According to the plaintiff, the defendant failed to ascertain the correct boundary line between the plaintiff's property and the property of Louis Fantarella, a property owner whose land bordered the property of the plaintiff to the north, south and west.

The plaintiff claimed that the defendant advised her that the north divisional line of the property ran along a certain location, plus or minus two feet. According to the plaintiff, the defendant represented that this was the true and correct north divisional line within a small margin of error and that the plaintiff was absolutely safe in erecting an in-ground swimming pool along said line. The plaintiff claimed that, in fact, the defendant's representation of the location of the north divisional line was incorrect and was approximately twenty to forty feet north of the correct divisional line that divided the plaintiff's and Fantarella's properties.

The plaintiff asserted that in reliance on the accuracy of the survey, she installed a septic system and an in-ground swimming pool. She claimed that as a result of the defendant's negligence in ascertaining the proper north divisional line, the septic system and the swimming pool were erected, in part, on land that belonged to Fantarella. The plaintiff asserted that Fantarella sued her, claiming damages and possession of the strip of land where the plaintiff's pool had been installed. The plaintiff further asserted that she settled Fantarella's lawsuit, and was required to remove the pool as a condi-

tion of the settlement. The plaintiff claimed that she suffered losses, such as the cost of building and removing the swimming pool, the counsel fees required to defend the lawsuit brought by Fantarella, the cost of maps, surveys, expert testimony and other expenses in preparing and defending the Fantarella lawsuit, and the cost of prosecuting this action. She also asserted that the property and its improvements have suffered a permanent loss in value.

In his answer, the defendant denied all of the essential allegations of the plaintiff's replacement amended complaint other than the allegation that the defendant was a professional engineer and land surveyor who held himself out to the public as an expert capable of determining the boundaries of property and the divisional lines thereof. The defendant also filed three special defenses. In his first special defense, the defendant asserted that any damages suffered by the plaintiff were caused by acts or omissions of parties over whom the defendant had no control. In his second special defense, the defendant claimed that the plaintiff was contributorily negligent because she unreasonably relied on the class D survey prepared by the defendant for purposes other than those contemplated by the parties at the time the survey was prepared, although the plaintiff was repeatedly cautioned by the defendant as to the limited use of a class D survey. Finally, in his third special defense, the defendant asserted that the inground swimming pool, as installed, was in violation of local inland-wetland regulations and local setback regulations, was installed without the necessary permits, and would have had to be removed, regardless of the alleged encroachment. The plaintiff denied all of the allegations of the special defenses and the parties were at issue.

After trial, the case was submitted to the jury, and the jury returned a verdict in favor of the plaintiff.[1] After the clerk read the verdict aloud, the jury affirmed that the verdict as read constituted its unanimous verdict. Without accepting the verdict, the trial court excused the jury from the courtroom and asked it to retire to the jury deliberating room. The trial court and counsel then engaged in a colloquy concerning the verdict returned by the jury. Following the colloquy, the trial court summoned the jury back into the courtroom. The jury foreperson confirmed to the trial court that the jury intended to award the plaintiff the amount of damages indicated on the verdict form.[2] The trial court asked the jury to return to the deliberating room, and the court engaged in additional colloquy with counsel. The court then submitted a handwritten interrogatory to the jury.[3] After deliberating, the jury returned a note with an answer to the interrogatory.[4]

---

[1] The verdict form stated in pertinent part:
"PLAINTIFF'S VERDICT

"In this case the Jury finds that the contributory negligence of the Plaintiff, Loraine Mallinson, if any, was not greater than the negligence of the Defendant, Jay I. Black, and therefore finds the issues for the Plaintiff, Loraine Mallinson, in accordance with the following calculations:

"1. Fair, just and reasonable compensation for the Plaintiff's, Loraine Mallinson's injuries:

Economic Damages: $54,716.00

Total:                   $54,716.00

"2. Percentage of the Plaintiff's, Loraine Mallinson's, negligence, if any: 31%

"3. If the Plaintiff, Loraine Mallinson, is found to be contributorily negligent:

a. Multiply #1 by #2: $16,961.00

b. Subtraction of #3a from #1: $37,755.00

VERDICT: $16,961 dollars damages in favor of the Plaintiff, Loraine Mallinson, against the Defendant, Jay I. Black."

[2] See footnote 1.

[3] The handwritten interrogatory submitted to the jury read as follows: "Do you find that the negligence of the plaintiff, if any, is 31% as indicated on your verdict or do you find as indicated by your award of $16,961 dollars damages that the negligence of the plaintiff, if any, is 69%?"

[4] The jury returned a written answer to the interrogatory as follows: "No, we found Jay Black negligent. We awarded plaintiff 31% of the $54,716.

The court and counsel engaged in a colloquy concerning the effect on the verdict of the answer to the interrogatory. The trial court then submitted to the jury new plaintiff's verdict forms and defendant's verdict forms, and again instructed the jury on the law regarding comparative negligence and its impact on any verdict. The trial court also instructed the jury to decide the following question: "Do you intend the verdict of $16,961 that you originally returned to the court to represent 31% negligence on the part of the defendant Jay Black?" The trial court concluded by stating: "So, I will ask you to answer that question and to take these forms and to retire and reconsider." Neither counsel took exception to the correctness of the trial court's supplemental instruction on the issue of comparative negligence. The defendant excepted only to the court's recharging on that issue at all, while the plaintiff excepted to the submission of the oral interrogatory.

The jury retired again to consider its verdict. The jury returned a plaintiff's verdict form showing a recovery for the plaintiff in the amount of $16,962. In this verdict, however, the jury concluded that the plaintiff was 69 percent negligent.[5] The trial court engaged in discussion

"We found others contributed, therefore our award to plaintiff was only $16,961 which equals the 31%.

"Your Honor the form is phrased as either or 100% or not. We cannot ascribe 69% to defendant because we don't feel he is entirely at fault."

[5] The second verdict form states in pertinent part:

"PLAINTIFF'S VERDICT

"In this case the Jury finds that the contributory negligence of the Plaintiff, Loraine Mallinson, if any, was not greater than the negligence of the Defendant, Jay I. Black, and therefore finds the issues for the Plaintiff, Loraine Mallinson, in accordance with the following calculations:

"1. Fair, just and reasonable compensation for the Plaintiff's, Loraine Mallinson's injuries:

Economic Damages: $54,716.00

Total: $54,716.00

"2. Percentage of the Plaintiff's, Loraine Mallinson's, negligence, if any: 69%

"3. If the Plaintiff, Loraine Mallinson, is found to be contributorily negligent:

with counsel regarding the verdict, and the court decided that it was necessary to determine the intent of the jury. After additional colloquy, the trial court decided that it would recall the jury, read the second verdict form into the record, and permit the parties to poll the jury. The plaintiff moved for a mistrial and the court denied the motion.[6]

The jury returned to the courtroom, and the trial court read the second verdict to the jury. Plaintiff's counsel then polled the jury. The clerk called the name of each juror, and plaintiff's counsel asked each juror whether it was that juror's decision that the plaintiff was 69 percent negligent. Each juror answered the question in the affirmative. After the poll was completed, the trial court asked the jury whether it was the jury's unanimous finding that the plaintiff was 69 percent contributorily negligent.[7] In unison, the jury responded affirmatively. The trial court accepted the verdict and ordered it recorded. The trial court then reread the verdict to the jury. The trial court next explained to the jury that the verdict was inconsistent, and that in light of the unanimous finding by the jury that the plaintiff was 69 percent contributorily negligent, a verdict in favor of the defendant was mandated. Accordingly, the trial court directed the jury to return a verdict in favor of the defendant. The jury retired and then returned with a defendant's verdict.

a. Multiply #1 by #2: $37,754.00

b. Subtraction of #3a from #1: $16,962.00

VERDICT: $16,962 dollars damages in favor of the Plaintiff, Loraine Mallinson, against the Defendant, Jay I. Black."

[6] The plaintiff does not claim on appeal that the trial court improperly denied the motion for a mistrial.

[7] The court inquired as follows: "Ladies and gentlemen, we have heard the verdict that you've rendered and the contributory negligence of the plaintiff and I'll ask if this is your unanimous finding, so say you one and so say you all, as to the finding that the plaintiff was 69 percent contributorily negligent?"

With the permission of the trial court, the plaintiff's attorney again polled the jury. The plaintiff's counsel asked each juror whether the defendant's verdict was that juror's decision, and each juror answered affirmatively.[8] The court then accepted and ordered recorded the defendant's verdict. The plaintiff filed a motion for a new trial and a motion to set aside the verdict. Both motions were denied and this appeal followed.

The plaintiff raises a number of claims on appeal; those claims are, however, interrelated. The principal issue raised in this appeal is whether the trial court properly directed a verdict for the defendant. We conclude that the trial court acted properly in directing the verdict.

"The rules controlling appellate review of a directed verdict are well settled. Directed verdicts are not generally favored. A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . . *Sokolowski* v. *Medi Mart, Inc.*, 24 Conn. App. 276, 285–86, 587 A.2d 1056 (1991); see also *Bleich* v. *Ortiz*, 196 Conn. 498, 500–501, 493 A.2d 236 (1985). We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. *Giles* v. *New Haven*, 228 Conn. 441, 444, 636 A.2d 1335 (1994); *Berry* v. *Loiseau*, 223 Conn. 786, 819–20, 614 A.2d 414 (1992)." (Internal quotation marks omitted.)

---

[8] Neither party raises any claim with respect to the unorthodox manner in which the rendition of the verdict or the polling of the jury took place. "The procedure which has been followed in our courts for many years for receiving, accepting and recording a verdict is outlined in [our case law]. . . . Under this procedure, the final assent of the jurors, given after the verdict has been read aloud by the clerk, accepted and ordered recorded by the court, and read aloud a second time by the clerk, makes the verdict. . . ." (Citations omitted.) *Ferris* v. *Hotel Pick Arms, Inc.*, 147 Conn. 72, 74, 157 A.2d 106 (1959).

*Bilodeau* v. *Bristol*, 38 Conn. App. 447, 454, 661 A.2d 1049, cert. denied, 235 Conn. 906, 665 A.2d 899 (1995).

"The verdict of a jury must contain an intelligible finding so that its meaning can be clearly ascertained." *Ferris* v. *Hotel Pick Arms, Inc.*, 142 Conn. 72, 73, 157 A.2d 106 (1959). The second verdict rendered by the jury clearly indicated that the jury intended to find the plaintiff to be 69 percent contributorily negligent. Nevertheless, the verdict was inconsistent because it was a plaintiff's verdict with an award of money damages that also indicated that the negligence of the plaintiff was greater than that of the defendant. Any ambiguity was dissipated, however, when the plaintiff's counsel polled the jury and confirmed that the jury had found the plaintiff to be 69 percent negligent. "We have sustained verdicts where they were incorrect as to form or contained irrelevant material but clearly manifested the intent of the jury." Id., 75.

In addition to the jury poll by the plaintiff's counsel, the trial court's interrogatory also clarified any uncertainty in the jury's verdict. The trial court inquired of the jury whether it was the jury's unanimous finding that the plaintiff was 69 percent contributorily negligent. In response to the trial court's interrogatory, the jury responded affirmatively. Only after the jury's answer did the trial court direct the jury to return a verdict in favor of the defendant. Moreover, plaintiff's counsel, at his own request, polled the jury after the rendition of the directed verdict, and each individual juror responded that the verdict was his or her decision.

"To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as a matter of law judgment could only be rendered for the party against whom the [general] verdict was found . . . . *Sullivan* v. *Nor-*

*walk*, 28 Conn. App. 449, 459, 612 A.2d 114 (1992); see *Belchak* v. *New York, N. H. & H. R. Co.*, 119 Conn. 630, 634, 179 A. 95 (1935); *Murteza* v. *State*, 7 Conn. App. 196, 201, 508 A.2d 449 (1986)." (Internal quotation marks omitted.) *Bilodeau* v. *Bristol*, supra, 38 Conn. App. 454.

The final verdict returned by the jury, as supplemented by the poll of the jury and its answer to the trial court's interrogatory, conclusively established that, as a matter of law, judgment could be rendered only in favor of the defendant. The provisions of General Statutes § 52-572h (b)[9] bar a plaintiff's verdict here because the jury found that the plaintiff's negligence was greater than the negligence of the defendant as established by the final verdict form and confirmed by the poll and the answer to the trial court's interrogatory. The trial court, therefore, properly directed a verdict in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] General Statutes § 52-572h (b) provides: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section."