[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE: MOTION TO SET ASIDE VERDICT. FOR JUDGMENT NOTWITHSTANDING THEVERDICT, FOR NEW TRIAL, AND FOR REMITTITUR
This motion to set aside verdict, for judgment notwithstanding the verdict, for new trial, and for remittitur follows a jury verdict for the plaintiff in the amount of $3,150,000. This amount is the total of economic damages ($1,360,000), non-economic damages ($1,360,000) and punitive damages ($430,000). On April 17, 1997, the defendants filed a motion to set aside the verdict, a motion for judgment notwithstanding the verdict a motion for new trial, and a request for remittitur. On June 23, 1997, the plaintiff filed a memorandum in opposition to the defendants' motions. Additionally, several reply and supplemental briefs have been filed by all the parties.
WAIVER
The plaintiff argues, as an initial matter, that the defendants waived their right to have this court consider many of the issues in the present motion by either not specifically objecting at trial or by not participating in the objectionable procedures to attempt to cure any objectionable deficiencies, after objections were noted by the court. The defendants claim that they did properly object to, or cure, the deficiencies raised by this motion.
"A motion to set aside the verdict serves at least four CT Page 11769 useful functions: (1) it allows the trial court, in the less hectic atmosphere of a post-trial proceeding, to reconsider its rulings and, if they are determined to have been erroneous as well as harmful, to grant a new trial without the necessity of an appeal; (2) it provides an opportunity for the court to explain and to justify the challenged rulings in a written memorandum far more effectively and clearly than is possible at trial; (3) after a verdict is rendered and before an appeal is taken it provides the only occasion for counsel to appear in court and to present arguments in support of their positions, which are ordinarily formulated much more clearly and persuasively than at trial; and (4) it induces counsel for the parties to reevaluate the strength of their positions in the light of a jury verdict and thus may lead to a settlement of the litigation." (Internal quotation marks omitted.) Prishwalko v. Bob Thomas Ford, Inc.,33 Conn. App. 575, 579-80, 636 A.2d 1383 (1994).
A motion to set aside is not a mechanism to be used for the benefit of the appellate courts. It is for the use of the trial court, to allow the court to reconsider actions made during the heat of trial, in order to correct them if they are deemed incorrect in hindsight. Therefore, objections which are normally waived on appeal because they were not objected to during the trial, can still be raised in a motion to set aside. See Barresev. DeFillippo, 45 Conn. App. 102, 104, ___ A.2d ___ (1997) ("Our review of the record reveals that the defendant first raised the claim of inconsistency in his motion to set aside the verdict. The defendant never undertook to require the plaintiff to choose between negligence and intentional battery and assault, did not except to the jury charge, and, in fact, submitted jury verdict forms and interrogatories based on the plaintiffs allegations of both negligence and intentional tort."). Accordingly, the plaintiff's claim of waiver, in response to the current motion, is misplaced. The court, therefore, now addresses the merits of the defendants' motion.
STANDARD
"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . This right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the CT Page 11770 right to have issues of fact as to which there is room for a reasonable difference of opinion among fairminded men passed upon by the jury and not by the court. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . ." (Citations omitted; internal quotation marks omitted.) Mather v. Griffin Hospital,207 Conn. 125, 138-9, 540 A.2d 666 (1988).
"[The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality. . . . Moreover, [I]t is not for us . . . to say what portions of the evidence should or should not have been believed by the jury in this case, but we are bound rather to decide whether the verdict was sound upon any reasonable and fair interpretation of the evidence." (Citations omitted, internal quotation marks omitted.) Champagne v.Raybestos-Manhattan, Inc., 212 Conn. 509, 555, 562 A.2d 1100
(1989). "In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict." Mather v. Griffin Hospital, supra,207 Conn. 139.
 I
JUDGMENT NOTWITHSTANDING THE VERDICT: PUNITIVE DAMAGES
The defendants seek a judgment notwithstanding the verdict on the issue of punitive damages "because the plaintiff failed properly to appraise the defendants of her claim, and because there was insufficient evidence from which a jury could reasonably conclude that the defendants had a sufficiently culpable state of mind to warrant the imposition of punitive damages." (Defendants' motion, p. 2.) The plaintiff argues that the defendants had sufficient warning about the plaintiff's intent to seek punitive damages and there was a sufficient amount of evidence to support the jury's award of punitive damages.
"To furnish a basis for recovery of [punitive] damages, the pleadings must allege and the evidence must show wanton or wilful CT Page 11771 malicious misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought." Markey v.Santangelo, 195 Conn. 76, 77, 485 A.2d 1305 (1985).
"A wilful and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in express malice. Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act. . . . Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . ." (Citations omitted; internal quotation marks omitted.) Markey v. Santangelo, supra,195 Conn. 77-8.
The issue of the plaintiff's alleged failure to properly apprise the defendants of her claim for punitive damages was settled when the plaintiffs motion in limine re: punitive damages (# 158) was granted on March 11, 1997. This court holds now, as it did then, that the plaintiff's complaint was sufficient to notify the defendants and the court that punitive damages would be requested.
The issue of whether there was sufficient evidence to support a jury finding of punitive damages is also resolved in favor of the plaintiff. There was evidence that the defendant ignored the plaintiff's request that he stop the medical procedure which caused the plaintiff's injuries. (Transcript 3/6/97 p. 33.) The jury reasonably could have concluded that this demonstrated the defendants' reckless indifference to the rights of the plaintiff. Accordingly, the motion to set aside and order a judgment notwithstanding the verdict on the issue of punitive damages is denied.
 II
NEW TRIAL ON ALL COUNTS: VERDICT PROCEDURES CT Page 11772
The defendants claim that "[t]he verdict should be set aside and a new trial granted on all issues and counts, because the verdict is void and defective as a matter of law, due to the procedure and instructions used by the Court in returning the jury for reconsideration of its verdict and the Court's failure to accept any of the special verdicts on liability and damages rendered by the jury in its interrogatory answers, and due to the utter confusion displayed by the jury and the jury's ambiguous and inconsistent verdicts." (Defendants' motion, p. 2.) Specifically, the defendants assert that the actions of the court were tantamount to a directed verdict in favor of the plaintiff. The defendants claim that the jury decided liability in the first and second verdicts through the use of the jury interrogatories. Since these verdicts were not accepted by the court and since there were no interrogatories used in conjunction with the third and final verdict, the defendants claim that the jury never officially entered a finding of liability against the defendants. According to the defendants, therefore, the court, and not the jury, decided the liability of the defendants.
The defendants argue in the alternative that if this court holds that the jury properly did find the defendants liable, then the verdict is still improper because it was a general verdict in a case involving a multiple count complaint.
The plaintiff argues that this was not a directed verdict. The plaintiff also argues that the procedures used by the court, when it sent the jury back to reconsider the issue of damages, were proper according to the General Statutes, the Practice Book, and case law.
There are three issues presented by this aspect of the current motion: (1) Whether the court was correct in sending the jury back to consider its verdict; (2) whether the procedures used by the court were improper; and (3) whether the jury's confusion and inconsistency between the three verdicts warrant a set aside and a granting of a new trial.
General Statutes § 52-223[1] and Practice Book § 311[2]
allow a trial court judge to return a jury for up to two reconsiderations of its verdict. The defendants correctly state that "[w]here answers to interrogatories are inconsistent, the trial court has the duty to attempt to harmonize the answers."Bilodeau v. Bristol, 38 Conn. App. 447, 455, 661 A.2d 1049, cert. CT Page 11773 denied, 235 Conn. 906, 665 A.2d 899 (1995).
In the present case, this court was attempting to "harmonize the answers" of the jury interrogatories when it returned the jury for reconsideration of its verdict. At that time, the court cited Bilodeau v. Bristol as its authority for returning the jury for reconsideration. (Transcript 3/12/97 p. 33.) Compare id. ("Here, the trial court made no attempt to harmonize the answer, nor did it, as caution dictated, return the jury to consider its verdict in light of the obvious inconsistency.") This court continues to maintain that Bilodeau v. Bristol provides a trial court judge the authority to send the jury back to reconsider its verdict.
The second issue raised by the defendants is whether the court used improper procedures when sending the jury back to reconsider its verdict.
In the present case, the jury's original verdict was against the defendants on liability. There was some confusion, however, regarding the damages aspect of the verdict. This court sent the jurors back to reconsider the damages aspect of their verdict, accompanied by new interrogatories and a new verdict form. After the jury returned, however, there was still some confusion regarding the damages aspect of the verdict. (The trial judge stated to the jury that: "We still have some confusion over the amount of damages that you have awarded." (Transcript 3/13/97 p. 91.)) The court sent the jury back a third time to reconsider the damages issue. When the jury returned for the last time, the court accepted and read the plaintiffs verdict form into the record.
"The verdict must contain an intelligible finding so that its meaning is clear." Kilduff v. Kalinowski, 136 Conn. 405, 409,71 A.2d 593 (1950). "[The Connecticut Supreme Court has] sustained verdicts where they were incorrect as to form or contained irrelevant material but clearly manifested the intent of the jury." Ferris v. Hotel Pick Arms, Inc., 147 Conn. 72, 75,157 A.2d 106 (1959).
Perhaps the best possible acceptance of the jury's verdict would have been accomplished by reading into the record the second answers to the jury interrogatories along with the verdict form. This argument, however, places form over substance. The substance of the verdict is clear from the record. After the jury CT Page 11774 returned its answers to the second set of interrogatories, the court noted that "[t]hey have found liability on all three counts. So that now they don't have to consider that. That has already been found." (Transcript 3/13/97 p. 72.)
The substance of the verdict was clear to both parties at the time the third and final verdict was accepted and recorded. This is evidenced by the fact that both parties declined the court's invitation to poll the jury. (Transcript 3/13/97 p. 115-16.)
When the jury is sent back to reconsider its verdict under General Statutes § 52-223 or Practice Book § 311 it still has the power to change any part of its verdict or keep it exactly the same as originally rendered. The real issue in the present motion, however, is whether the court may instruct the jury to reconsider only the damages aspect of its verdict.
The case law supports the power of a trial court to send the jury back for the sole purpose of reconsidering the damages aspect of the verdict. King v. Haynes, 114 Conn. 396, 397-98,158 A. 915 (1932) ("[I]t is desirable if not necessary to submit another form of verdict for the use of reconsideration lead them to change their conclusion.") See also Black v. Griggs,74 Conn. 582, 51 A. 523 (1902). It is only improper for the court to send the jury back for the exclusive reconsideration of the damages award when the court believes that the jury arrived at its computation of damages through use of a quotient verdict.Prussick v. Charles A. Meizies, Inc., 10 Conn. Sup. 99, 100
(1941). There is nothing in the record to suggest that the jury made a quotient verdict. The court's action, therefore, of sending the jury back to reconsider only the damages award, was proper.
The third issue is whether the jury's confusion and inconsistency between the three verdicts warrant a set aside and a granting of a new trial.
As already discussed above, the court is well within its discretion when it returns the jury to reconsider its verdict. This procedure is authorized by both the Practice Book and the Connecticut General Statutes. See General Statutes § 52-223. See also Practice Book § 311. The fact that the jury appeared confused on the first and second verdict does not impact or affect the third verdict. It is always possible, that when the court returns the jury to reconsider its verdict, confusion might CT Page 11775 result. The exercise of this power by the court does not demand a new trial every time a second or third consideration produces a different verdict. This is especially true since usually the outcome that the court is seeking, when it returns a jury to reconsider its verdict, is a different verdict.
Therefore, based on the above discussion, the court holds that the verdict should not be set aside on the ground that "the verdict is void and defective as a matter of law, due to the procedure and instructions used by the Court in returning the jury for reconsideration of its verdict and the Court's failure to accept any of the special verdicts on liability and damages rendered by the jury in its interrogatory answers, and due to the utter confusion displayed by the jury and the jury's ambiguous and inconsistent verdicts."
 III
NEW TRIAL ON ALL COUNTS: JURY INSTRUCTIONS
The defendants also claim that "[t]he verdict should be set aside and a new trial granted on all issues and counts, because the evidence was insufficient to warrant an instruction to the jury that it could award damages for loss of future earning capacity, future medical expenses, fear of future illness, and fear of acquiring AIDS." (Defendants' Motion, p. 3.) The plaintiff argues that there was a sufficient amount of evidence to support the court's instructions to the jury on these issues.
"It is established law that it is error for a court to submit to the jury an issue which is wholly unsupported by the evidence." (Internal quotation marks omitted.) Wassell v.Hamblin, 196 Conn. 463, 470-1, 493 A.2d 870 (1985). However, it is important to emphasize that in a motion to set aside, the court must view the evidence in the light most favorable to retaining the verdict. See Mather v. Griffin Hospital, supra,207 Conn. 138-39. "Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . Although damages often are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier . . . this situation does not invalidate a damage award as long as the evidence afforded a basis for a reasonable estimate by the [trier] of that amount. . . . Mathematical exactitude in the proof of damages is often impossible, but the plaintiff must CT Page 11776 nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate." Lawson v. Whitey's Frame Shop,241 Conn. 678, 689-90, ___ A.2d ___ (1997).
After reviewing the record, the court finds that there was sufficient evidence to support the court's instructions concerning which factors the jury was allowed to consider when awarding damages in this case. The loss of future earning capacity instruction was supported by the evidence concerning the plaintiff's current employability, past employment, and the current minimum wage. (Transcript 2/21/97 p. 133; 3/6/97 p. 25, 68; 3/11/97 p. 161.) The plaintiffs possible future medical expenses were supported by Dr. Martinez's testimony concerning the plaintiff's future need of cognitive therapy and case management, along with the extensive testimony by others concerning the plaintiff's current difficulties in day to day living. (Transcript 2/21/97 p. 133-34; 2/19/97 p. 129-32; 3/6/97 p. 157-59, 165.) The plaintiff's fear of future illness was supported by the evidence concerning the extensive damage caused to the plaintiff's body by her ordeal with the defendant. Lastly, the plaintiff's fear of acquiring AIDS was supported by her own testimony. (Transcript 3/6/97 p. 68.)
It is important to note that the court simply instructed the jury that it could consider such evidence in awarding damages if
it found such concerns were reasonable. If the jury did not find these concerns to be reasonable, then it would have ignored such evidence in its damage calculations. (Transcript 3/11/97 p. 170.) ("If you [the jury] find that plaintiff has offered no evidence that she was placed at risk of acquiring AIDS, you may not award damages for this claim. If you [the jury] find that a reasonable person in plaintiff's circumstances would fear that she could have acquired AIDS from the blood transfusions, you may award damages on this claim."))
The defendants also claim that "[t]he verdict should be set aside and a new trial granted on all issues and counts, because the evidence was insufficient to permit the jury to consider the issue of the plaintiff's alleged brain injury and resulting cognitive impairment, and the issue of the plaintiff's alleged back pain." (Defendants' Motion, p. 2.) The plaintiff argues that there was a sufficient amount of evidence to support the court's jury instructions on these issues. The court agrees with the plaintiff. CT Page 11777
The evidence concerning the plaintiff's alleged back pain consisted of the plaintiff's own testimony. (Transcript 3/6/97 p. 63-4.) The evidence of the plaintiff's cognitive impairment consisted of the testimony of Dr. Crane and the reports of Martinez. (Transcript 2/7/97 p. 105; 2/21/97 p. 128, 132.) See also plaintiff's exhibits 21, 22, Transcript 2/21/97 p. 128; Transcript 3/6/97 p. 57, 58, 62, 66.
Therefore, the court finds that the verdict should not be set aside on the ground that "the evidence was insufficient to warrant an instruction to the jury that it could award damages."
 IV
NEGLIGENT INTENTIONAL BATTERY
The jury in the present case found the defendants liable for both lack of informed consent and intentional battery. The defendants, in their brief, criticize the jury's verdict on the ground that these informed consent and intentional battery are mutually exclusive of one another.
"A claim of lack of informed consent is an action in negligence." Hammer v. Mount Sinai Hospital, 25 Conn. App. 702,724, 596 A.2d 1318 (1991). A claim of intention battery is, obviously, an intentional tort. "It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree . . . are separate and mutually exclusive." United Services Automobile Association v.Marburg, 46 Conn. App. 99, 105, ___ A.2d ___ (1997). Therein lies the problem claimed by the defendants.
The issue is whether the jury could have properly found the defendants liable for lack of informed consent and intentional battery.[3] This is only possible if each of these claims are based upon a different cause of action. See Hammer v. Mount SinaiHospital, supra, 25 Conn. App. 702 (allowing a claim for negligence in carrying out a medical procedure on the plaintiff and for not securing the plaintiffs informed consent for the same medical procedure).
"A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief" (Internal quotation marks omitted.) Barrett v. Danbury Hospital, 232 Conn. 242, 264, CT Page 11778654 A.2d 748 (1995). "Even though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action." Wade's Dairy, Inc. v. Fairfield,181 Conn. 556, 560, 436 A.2d 24 (1980).
The cause of action brought by the plaintiff for lack of informed consent is based on the fact that the defendant doctor did not fulfill his duty of properly informing the plaintiff of the risks involved with an endometrium biopsy.[4] The cause of action for intentional battery may have been based on several facts: That the defendant doctor failed to obtain the plaintiff's consent to perform the endometrium biopsy; or that he performed the endometrium biopsy when the plaintiff only consented to a routine pelvic exam; or that he knew that the plaintiff did not understand what the procedure entailed. All of these groups of facts, however, are different than those alleged for the cause of action sounding in lack of informed consent.[5] Accordingly, the jury verdict finding the defendants liable for both lack of informed consent and intentional battery was proper.
The defendants also claim that "[t]he verdict should be set aside and a new trial granted on all issues and counts, due to the Court's erroneous charge on intentional and negligent battery." (Defendants' Motion, p. 2.)
"It is well settled that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . The test is whether the charge as a whole fairly presented the case so that no injustice was done. (Citations omitted.) VanSteensburg v. Lawrence Memorial Hospitals, 194 Conn. 500, 507,481 A.2d 750 (1984).
"The theory of battery as a basis for recovery against a physician has generally been limited to situations where he fails to obtain any consent to the particular treatment or performs a different procedure from the one for which consent has been given, or where he realizes that the patient does not understandwhat the operation entails." (Emphasis added.) Logan v. GreenwichHospital Association, 191 Conn. 282, 289, 465 A.2d 294 (1983).
In the present case, the court instructed the jurors that they "may only find that Dr. Allen committed intentional battery if [they] find that the plaintiff had not given her informed consent to Dr. Allen and Dr. Allen knew that the plaintiff had CT Page 11779 not given her informed consent but performed the endometrial biopsy despite this knowledge." (Transcript 3/11/97 p. 158-9.) This charge properly illustrated the requirements of the law of intentional battery that were applicable to this case.
The sequence of the court's rendition of the law concerning these torts was unique, but not improper. The court's instructions to the jurors enabled them to first decide if there was a battery, and then whether it was negligent or intentional. The court finds that the overall charge concerning intentional and negligent battery was understood by the jury, legally correct, and did not result in any injustice.
Lastly, the defendants claim that "[t]he verdict should be set aside and judgment entered for the defendants notwithstanding the verdict, because of . . . insufficiency of evidence on several elements of the causes of action for informed consent and intentional battery." (Defendants' Motion, p. 2.) Specifically, the defendants assert that the plaintiff has failed to introduce evidence demonstrating all of the required elements of intentional battery. The absent elements, as claimed by the defendants, are expert testimony as to viable alternative medical procedures and evidence that the plaintiff would have chosen these other procedures.
The plaintiff correctly argues that the expert who testified regarding the existence of other medical options was the defendant doctor himself (Transcript 2/6/97 p. 143-45; 2/13/97, p. 55-62; 2/20/97 p. 16-18; 3/7/97 p. 175.) The plaintiff also correctly indicates that she did not have to prove that she would have chosen such other alternatives had they been presented to her. This is not an element of intentional battery in Connecticut. Hammer v. Mount Sinai Hospital, supra,25 Conn. App. 711-2.
Therefore, the verdict should not be set aside on the ground that there was insufficient evidence "on several elements of the causes of action for informed consent and intentional battery."
 V
MISCELLANEOUS
The defendants have also claimed that "[t]he verdict should be set aside and a new trial granted because of the improper CT Page 11780 conduct of the plaintiff's counsel to inflame the jury" and because "the size of the verdict should shock the Court's sense of justice and warrant the inference that the jury was motivated by improper factors." (Defendants' Motion, p. 2, 3.)
The defendants' first claim is a mere blanket accusation incorporating the language of the standard for a motion to set aside. The actions of both attorneys in this case amounted to the zealous representation of their clients. There was nothing done on either side that overstepped these boundaries.
The second claim offers nothing more than a legal standard and a suggestion that the standard was surpassed. The concrete discussions of evidence and the record, stated above, adequately address the concerns embodied in the defendants' assertion and need not be repeated.
 VI
REMITTITUR
"In ruling on the motion for remittitur, the trial court [is] obliged to view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." Eisenbach v.Downey, 45 Conn. App. 165, 184, ___ A.2d ___ (1997).
This court has carefully reviewed, in a light most favorable to the plaintiff, the jury's verdict, the evidence, and the post-trial briefs submitted by both parties. The court finds that the jury's verdict regarding the economic damages "shocks the sense of justice as to compel the conclusion that the jury was influenced by . . . mistake." As such, the request for remittitur is granted.
A. ECONOMIC DAMAGES
The parties have apportioned the economic damages into the following categories: Past medical bills; case management; CT Page 11781 cognitive retraining and lost earning capacity.
B. PAST MEDICAL BILLS
There is no dispute regarding the amount of the plaintiff's past medical bills. These bills total $47,836.47.
2. CASE MANAGEMENT
"[A]s to future medical expenses, the jury's determination must be based upon an estimate of reasonable probabilities, not possibilities. . . . The obvious purpose of this requirement is to prevent the jury from awarding damages for future medical expenses based merely on speculation or conjecture." (Citations omitted; internal quotation marks omitted.) Marchetti v. Ramirez,240 Conn. 49, 54, 688 A.2d 1325 (1997).
The plaintiff argues that the jury could have reasonably found that she would require case management anywhere between one and five days per week for up to the duration of the plaintiff's life. This would cost upwards of one million dollars. The plaintiffs counsel stated at closing arguments, however, that "the range for that case management . . . is fifty to one hundred thousand dollars." (Transcript 3/11/97 p. 58.)
The only evidence regarding the reasonable probability of future case management costs is Martinez's testimony. Martinez recommends case management services at a minimum of once per month; (Transcript 2/21/97 p. 131); for an estimated duration of the rest of the plaintiff's life (41.6 years). (Transcript 2/21/97 p. 130.) Martinez indicated, however, that if "certain issues . . . come up, that may require more monitoring, then it may be more frequent." (Transcript 2/21/97 p. 131.)
The fee for a case management session ranges between $75 and $100. (Transcript 2/21/97 p. 131.) The minimum cost for future case management, based on Martinez's testimony, is $49,920.00. Martinez indicated, however, that there would be a need for additional services if "certain issues . . . come up. " It is reasonable to conclude, therefore, that the jury could have reasonably awarded the maximum amount suggested by the plaintiffs counsel at closing arguments ($100,000) for future case management costs.
3. COGNITIVE RETRAINING CT Page 11782
The plaintiff argues, in her briefs, that the jury reasonably could have awarded $96,380 for costs relating to cognitive retraining. During closing arguments, however, the plaintiffs counsel informed the jury that the cost for the plaintiff's future cognitive retraining would be between $4500 and "approximately $12,000." (Transcript 3/11/97 p. 58.) The only evidence regarding cognitive retraining is Martinez's testimony. Martinez testified that the plaintiff would need cognitive therapy for "a duration of nine months to a year . . . [o]ne to two times a week." (Transcript 2/21/97 p. 129.) The cost for the treatment is "[one] hundred and fifteen dollars an hour, and the initial evaluation is three hundred and fifteen dollars." (Transcript 2/21/97 p. 130.) There was no testimony as to how long an average treatment session would last.
Two one hour treatments every week for one year, plus the initial evaluation cost, amounts to $12,310. It is reasonable to conclude, therefore, that the jury could have awarded the plaintiff up to $12,310 in cognitive retraining costs.
4. LOST EARNING CAPACITY
The evidence regarding the plaintiffs lost earning capacity showed only that in 1981, the plaintiff worked at a factory for five months earning an average of "around $200" per week. (Transcript 3/6/97 p. 25.) Martinez testified that based on the plaintiff's neurological injuries (determined by the jury to be caused by the defendant in 1990), the plaintiff "will have difficulty sustaining, gaining, competitive employment, and that she will need assistance developing skills, as well as assistance with placement. And that she would . . . best be able to perform repetitive, rote activities, and with initial supervision to ensure that she has learned the task before the supervision is weaned." (Transcript 2/21/97 p. 133.)
The only evidence regarding the plaintiff's ability to work indicates only that the plaintiff will have "difficulty" gaining and sustaining employment. There was no evidence presented by the plaintiff regarding what type of jobs involve "repetitive, rote activities." The plaintiff did not present evidence of the average salaries paid to employees performing these activities, or how these activities might be different or pay less than what the plaintiff was previously capable of earning. The defendant, however, states that "at best, the jury would have been permitted CT Page 11783 from the evidence to award [the plaintiff's] $20 per week difference between the minimum wage and the one job Ms. Perez had ever held, or $43,264 over her 41.6 year life expectancy." (Defendant's reply memorandum, p. 35.) The court, in an effort to view the evidence in a light most favorable to the plaintiff, accepts the defendants' concession.
In sum, the most that the jury could have reasonably found as the total amount of the plaintiff's economic damages is $203,410.47.
B. NON-ECONOMIC DAMAGES
"The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake, or corruption." Davis v. Druks,43 Conn. App. 453, 455, 683 A.2d 745 (1996).
The jury awarded $1,360,000 in non-economic damages. This court finds that the amount of non-economic damages awarded by the jury does not "shock the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake, or corruption" and is within the fair and reasonable compensation" in this particular case. See discussion, supra.
C. PUNITIVE DAMAGES
The total amount of the economic and non-economic damages discussed above is $1,563,410.47. The parties have already stipulated that punitive damages would be limited to an amount equal to the formula stated in General Statutes § 52-251c. Pursuant to that formula, the plaintiff is entitled to punitive damages in the amount of $316,341.05.
In sum, the court holds, based on all of the above, that the verdict be set aside unless, within thirty (30) days, the plaintiff files with the clerk a remittitur to the amount of the verdict of $1,270,248.55. If the remittitur is filed, a judgment in favor of the plaintiff against the defendants for $1,879,751.45 plus costs shall be entered.
MINTZ, J. CT Page 11784